WATSON ET UX. *v.* DOCKETT ET UX.

[No. 303, September Term, 1961.]

*Decided June 8, 1962.*

64

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Edward J. Bagley* and *John W. Mitchell,* for appellants.

*Harry L. Durity,* for appellees.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Prince George's County, Maryland, awarding the appellees, James L. Dockett and Henrietta Dockett, his wife, the adoption of an infant child, Iola Denise Moore, hereinafter referred to as Denise, over the objection of the child's mother, Mildred M. Watson, one of the appellants.

Denise was born October 13, 1958, out of wedlock, in a Philadelphia hospital, to Mildred M. Watson, who was then known as Mildred Moore, before her marriage to the appellant, Charles M. Watson. She was a premature child and remained in the hospital until the latter part of January, 1959, when her mother brought her to the latter's home in Brandywine, Prince George's County, Maryland.

Mildred had, prior to the birth of Denise, become the mother of another female child, born out of wedlock, known as Thyssen Odessa Moore, who is approximately a year older than Denise. Mildred has made her home with her parents, Mr. and Mrs. Peter Moore, at Brandywine, and it was to this home that the infant was taken from the Philadelphia hospital.

In August 1959 Denise, according to Mildred, was given to Henrietta Jackson (prior to her marriage to James L. Dockett) for a short visit, and at the request of Henrietta, who had been Mildred's schoolmate and friend for a number of years. According to Henrietta the infant was given to her for care and keeping under a more or less permanent arrangement. At this time Henrietta was living with her sister, Irene Porter, not far from the Moore home in the Brandy-

wine area. Mildred visited the infant or saw her from time to time, although the frequency of such occasions was in controversy.

On November 19, 1960, the appellees, Henrietta and James L. Dockett, were married. They moved into a new frame house consisting of three bedrooms, a living room, kitchen, dinette, full basement and bath, which he had constructed prior to the marriage in the Brandywine area; and Henrietta took the infant with her to the new dwelling, which was designed to provide a room for the child. A friend, Beatrice Brown, with her two children, moved into the Dockett household under a more or less temporary arrangement. There was dispute as to the frequency with which Mildred saw her child after she went to the new Dockett home, but it is not controverted that she did see the child and discuss her future with the Docketts.

On September 25, 1960, Mildred married the appellant Charles M. Watson. They made their home with Mr. and Mrs. Peter Moore, her parents, near Brandywine, from the time of the marriage until at least the time of the court hearing of the case in August 1961. At that time they were planning to construct a house on some land given them about a city block from the Moore home. This dwelling was to be modern and adequate. The appellants have had a male child, Orlando, born March 25, 1961, which, with Mildred's oldest daughter Thyssen, and Denise since June 23, 1961, constitute their family household. Mildred does not work but cares for her children. Charles works as a farmer with his father-in-law, Peter Moore, and on weekends as a manager of a tavern or restaurant, known as the Moonlite Inn, in Charles County. He has an income of approximately $7,000 a year. Mildred is twenty-one years old, and her husband, Charles, is thirty-four.

James L. Dockett is thirty years of age, is employed in the Oxon Hill post office and earns approximately $6,000. Henrietta, twenty-three years of age, works as a domestic and earns approximately $35.00 per week. During the absence of the Docketts from home while at work, arrangements had been made for Henrietta's sister, Irene Porter, to care for the child.

On June 23, 1961, Mildred, with a Prince George's County

police officer, went to the Dockett home and obtained the infant, who was peaceably turned over to her by the Docketts. Since that time until the present (pursuant to a stay pending appeal granted by the trial judge after the award of adoption to the Docketts) Denise has remained in the care and custody of the appellants.

Meanwhile, on June 21, 1961, the appellees, in Adoption No. 1484, filed a petition for the adoption of the infant. The natural mother, Mildred, joined by her husband, Charles M. Watson, answered a show cause order in the case in opposition to the petition for adoption. A hearing was held by the court on August 2, 1961. It became evident that the husband of the natural mother of the infant was desirous of adopting her, as well as Thyssen, the other illegitimate child of Mildred, with whom this appeal is not concerned. Judge Gray suggested that a petition for adoption be filed by Charles M. Watson for the adoption of both infants in order that the entire matter could be disposed of at one time. The judge also directed the Department of Parole and Probation to make a home investigation of both the Dockett and Watson homes and to report to him concerning them before he would render a decision.

On August 9, 1961, the appellants filed a petition in Adoption No. 1530 for the adoption of both Thyssen Odessa Moore and Denise by the appellant Charles M. Watson, accompanied by the consent of Mildred M. Watson, the natural mother. The appellees filed a pleading in opposition to the adoption of Denise by the husband Watson.

In November 1961 the two cases were consolidated and came before the court for decision, it being stipulated and agreed that the testimony taken on August 2, 1961, and the report of the Department of Parole and Probation should be considered in connection with both cases.

The mother of the infant the subject of this appeal, Mildred M. Watson, never consented to the adoption of Denise by the appellees, but the court by decree dated November 16, 1961, awarded the adoption of Denise to the appellees; and in a separate decree awarded the adoption of Thyssen, the other

illegitimate child of the appellant Mildred M. Watson, to her husband, Charles M. Watson.

The chancellor in his oral opinion based his decision to award the adoption of Denise to the Docketts on a finding that the consent of the appellant, Mildred M. Watson, was withheld "contrary to the best interests of the child."

Code (1957), Article 16, § 74 requires that a consent be obtained from the mother of a child born out of wedlock, if she is alive and has not lost her parental rights through court action, or voluntary relinquishment or abandonment. That section also provides that the court may grant a petition for adoption without a consent, if, after a hearing, the court finds that such consent was withheld contrary to the best interests of the child.

After considering the testimony and the report of the Department of Parole and Probation the chancellor, in his opinion, stated that the appellant, Mildred M. Watson, had not forfeited "her natural interest or right to the child." He further recognized that there was nothing to indicate that Watson was not a proper person to adopt his wife's child, and without hesitation awarded the adoption of the older child to him. It was implicit in his opinion that he found both families suitable for purposes of adoption, but concluded with some hesitation that the best interests of the child would be furthered by its adoption by the Docketts. He seemed to think in this case that the Docketts loved the child more than the Watsons. While this may have been a valid conclusion and should be considered in connection with the other factors involved in determining what is for the best interests of the child, it is by no means a controlling criterion. Moreover, affection is a subjective emotion and its degrees are almost impossible to assess because of varying reactions of different types of people. He also thought that the Docketts had developed a deep and genuine affection for the child while it was in their custody and that the mother's attachment to the child was a "new found thing" due to the prodding of her father to gratify his feeling that to permit its adoption out of the family would be a reflection upon his family.

This was not a clear cut case. The applicable law in this situation has been succinctly stated by Judge Hammond, speaking for this court, in *Walker v. Gardner,* 221 Md. 280, 284, 157 A. 2d 273:

> "As in custody cases, 'the welfare and best interests of the child are the primary considerations in all adoption proceedings.' *Winter v. Director,* 217 Md. 391, 396; *King v. Shandrowski,* 218 Md. 38, 42-43. Unlike awards of custody, however, adoption decrees cut the child off from the natural parent, who is made a legal stranger to his offspring. The consequences of this drastic and permanent severing of the strongest and basic natural ties and relationships has led the Legislature and this Court to make sure, as far as possible, that adoption shall not be granted over parental objection unless that course clearly is justified. The welfare and best interests of the child must be weighed with great care against every just claim of an objecting parent.
>
> " '[T]he Court of Appeals has indicated that it will not permit trial courts to decree adoptions over the expressed objection of the natural parent or parents, save in very strong cases.' Strahorn, *Adoption in Maryland,* 7 Md. L. Rev. 275, 295."

The advantages to the child of remaining with the natural mother and of being adopted by her stepfather are evident from the testimony. The natural mother does not work and, therefore, would be available to care for the child. The appellee, Henrietta Dockett, is employed and would have to leave the child with others while working. The child, if with the appellants, would be in the company of her siblings, namely Thyssen and Orlando, the younger child of the Watsons. Another consideration, which we think important and bears upon the best interests of the child and refutes the wisdom of granting this adoption to the Docketts, is that both the natural mother and her husband, the child's siblings, and the adoptive parents live in and are part of the same community. The testimony

and the report of the Department of Parole and Probation clearly indicate that the infant child knows her mother, identifies herself with her mother, and is obviously old enough not to forget such identification. The appellants and their relatives are long-time residents in the community, own a farm there, so that it can be concluded they will remain there. The appellees also, in all probability, will remain in the same community, as they are buying a home there.

We conclude that the appellees did not make out a strong case for the adoption of the infant over the objection of its natural parent so that the chancellor erred in his holding that the consent was withheld contrary to the best interests of the child, and in declining to award its adoption to the appellant, Charles M. Watson.

> *Decree reversed and cause remanded for the passage of a decree in accordance with this opinion. Costs to be paid equally by the appellants and the appellees.*