George Starke, J.
This is an application by the wife to change her name as well as the names of her three children to her maiden surname. The children, aged 9, 7 and 3%, reside with her. Her husband, the father of the children, was convicted of murder in the second degree and sentenced for a term of 30 years to life. The conviction was affirmed by the Appellate Division on October 19, 1965 (24 A D 2d 32) and by the Court of Appeals on July 7, 1966 (18 N Y 2d 162).
The basis for the desired change is the notoriety and continuing stigma by reason of the trial, conviction and sentence of her husband (although she does not believe he is guilty of the murder), and his “ way of life ” prior to the trial of addiction to gambling and extramarital activities.
The court does not feel it either advisable or necessary to hold a hearing. The parties have heretofore received more publicity than they could possibly want. Any further notoriety would certainly not be beneficial to the children, nor aid in a resolution of this application.
There is no objection to the change of the wife’s name, nor could there validly be any. However, objections have been filed by both the father and paternal grandfather to the change of name of the children. The petitioner argues strenuously that they have no right to be heard.
At the court’s suggestion, the petitioner did, nevertheless, give due notice of this application and did serve copies of the papers upon the husband, albeit most unwillingly. The petitioner contends that her husband is “ civilly ” dead and that she is not required to give him notice of the application, that the change-of-name statute does not give the court authority to direct that notice be served upon him, that his consent to the change of names of the children is not necessary, and that he has no status to participate in this proceeding.
The petitioner further maintains that since her husband is not “living”, he not only has no legal right to present objections but he has no right to be heard and is merely an “uninvited intruder”. As to the grandfather’s objection, the petitioner claims that he has absolutely no legal standing whatsoever before the court in this proceeding, that he has even less right to object than his son, and consequently he is a mere “interloper”.
*1014 The applicable statute (Civil Eights Law, §§ 60-62) provides that either parent may petition the court to change the name of an infant, but that if the application is made by one parent, “ notice must be served upon the other if he or she be living ”. (Emphasis supplied.)
The husband in the case at bar, having been sentenced to life imprisonment, ‘‘ is deemed civilly dead ’ ’ by virtue of section 511 of the Penal Law. The fiction of civil death is not to be given the same effect as actual death in all cases (Matter of Pallas, 264 App. Div. 1, affd. 291 N. Y. 692). While a life prisoner cannot commence an action to enforce or protect his rights or perform any legal function in his own name (Quinn v. Johnson, 78 N. Y. S. 2d 499), he still can be sued through a personal representative appointed for that purpose (Green v. State of New York, 277 N. Y. 15; Markowitz v. Fein, N. Y. L. J., Oct. 21, 1965, p. 17, col. 7). He is not divested of his property rights, but is entitled to inherit as a distributee and may transfer his property by will (Matter of Shaffer, 184 Misc. 855; Penal Law, § 512).
By reason of the civil death of a person sentenced to life imprisonment, his marriage is ipso facto terminated (Matter of Lindewall, 287 N. Y. 347). The fact of such civil death and the consequent termination of the marital status is absolute whether this is held to be immediate (Matter of Lindewall, supra) or upon the election of the innocent wife (Brookman v. Brookman, 161 Misc. 741) or by her remarriage (Jones v. Jones, 249 App. Div. 470, affd. 274 N. Y. 574; Zizzo v. Zizzo, 41 Misc 2d 928; Wilder v. Wilder, 181 Misc. 1059).
The change-of-name statute is silent on the matters of whether (1) the court has the authority to direct that the notice be served upon a husband declared ‘ ‘ civilly ’ ’ dead and whether (2) such husband’s consent to the infant’s change of name is required. It is interesting to note, however, that the adoption statute (Domestic Eolations Law, § 111) does make specific provision therefor. This statute provides that where an adoption of a child is sought ‘ ‘ the consent shall not be required of a parent * * * who has been deprived of civil rights”. The statute further provides that ‘ ‘ notice to a parent may be required if the judge or surrogate so orders” (Matter of Anonymous, 17 Misc 2d 691).
While the adoption statute specifically excludes the need for -consent of a parent who has been deprived of his civil rights, no such exclusion appears in the change-of-name statute. Furthermore, the adoption statute specifically provides that even though such consent is not iwessary the court may never *1015 tkeless require that notice be given to such parent. On the other hand, the change-of-name statute is not only; silent on the need of consent of such parent but also makes no mention of the matter of the court requiring notice to be given.
It is indeed significant to note that a father who has been sentenced to life imprisonment forfeits all rights to guardianship of his child and even a pardon does not restore those rights (Domestic Delations Law, § 58).
This court holds that a husband receiving a life sentence, being ‘ ‘ civilly ’ ’ dead, is not ‘living ’ ’ within the meaning of the change-of-name statute. Therefore, the wife is not required by the statute to serve him with notice of the application. Although the statute, unlike the adoption statute, is silent on the subject of consent, it is not necessary to obtain the husband’s consent to the infants’ change of name where he has been pronounced ‘ ‘ civilly ’ ’ dead. His civil death deprives him of a legal right to demand notice of the petition, the right to present objections or the right to be heard.
"While the change-of-name statute, unlike the adoption statute, makes no provision for the court’s authority to direct that notice be served upon the person deprived of his civil rights, it is the holding of this court that it has the inherent power to make such a direction. This comes by virtue of the fact that the court is charged with the obligation and responsibility of deciding what is in the best interests and welfare of the children. The paramount concern of the court is whether the interests of the infant will be substantially promoted by the change ” (Civil Eights Law, § 63). Consequently, although the father and grandfather have no legal standing before the court, the court may invite them to submit information which might be helpful to the court in determining whether the best interests of the children will be served by the proposed change. The court therefore rejects the appellation of the husband as an ‘ ‘ uninvited intruder ’ ’. The term ‘ ‘ interloper ’ ’ as applied to any grandfather is repugnant to the court and in bad taste. The court has thus duly considered the objections filed by the father and grandfather. In Matter of Nudelman (196 Misc. 1058) the court permitted a private citizen to supply information which assisted the court in deciding a change-of-name application.
In Matter of Greenfield (281 App. Div. 887) it was held that while the divorced parent’s consent to the adoption was not required, the court may direct that notice of the application be served upon him and that the divorced parent may, upon the hearing of such application, acquaint the court with such in for *1016 mation the parent may have as will aid the court in determining whether “ the moral and temporal interests ” of the child will be promoted by the adoption.
In Matter of Harris (43 N. Y. S. 2d 521, 522) where the divorced mother sought to change her son’s name to her maiden surname, the court said: “Although the father’s consent is thus unnecessary, [the infant being over 16 years of age], he [the father] may still present to the Court objections based on the welfare of the infant.” In the case of Matter of Miller (179 N. Y. S. 181) an adoption proceeding, it was held that although the ‘consent ” of a parent who has been deprived of his civil rights is unnecessary, the court could and did nevertheless consider objections raised by the father in an affidavit and letter forwarded from prison. Although the husband’s consent to the adoption was not required in Matter of O’Daniel (128 N. Y. S. 2d 351, 352-353) the court considered the objections but overruled them on the ground that they were not well taken “ since they do not raise the issue of whether or not the child’s moral and temporal interests would be promoted by granting the application.”
And now we come to the basic and prime question: “ Is the proposed change in the best interests and welfare of the children and will the change be substantially beneficial to them? ”
“ To deprive a son of his father’s surname is a serious and far-reaching action ” (Matter of Pollack, 2 A D 2d 756). “ It is not the policy of this court to grant applications of infants for change of name, unless there is a compelling reason for it. It is better for them to wait until they have reached maturity ’ ’ (Matter of Biegaj, 25 N. Y. S. 2d 85, 86). In Matter of Baldini (17 Misc 2d 195) where the mother sought to change the name of her four-year-old infant to her maiden name, the court said: ‘ ‘ The father of the infant has a natural right to have his son bear his name unless the child’s best interests are adversely affected. Moreover the child should in due course know of his parentage and when he has attained a certain maturity in understanding the circumstances, may of his own volition choose a name differently from his birth. (Smith v. United States Cas. Co., 197 N. Y. 420.) ‘ Until then the court will not and should not endeavor to interfere with the usual custom of succession to paternal surname nor foster any unnatural barrier between the father and son.’ (Matter of Epstein, 121 Misc. 151, 152; Matter of Cohn, 181 Misc. 1021).”
This court subscribes to the principles set forth in these three cases. However, it must not be overlooked that certain factors were present in these cases. Firstly, the father either supported *1017 or offered to support the infant. In the Baldini case (supra) ‘ ‘ the mother has persistently refused to accept contributions for the support of the infant ”. Secondly, it is to be observed that the court found in all of these cases that there was no “ compelling reason ” for the change and it was not shown that the child’s “ best interests are adversely affected” by the retention of the father’s name.
In Matter of Wittlin (61 N. Y. S. 2d 726, 728) the court said: ‘ ‘ Where a parent has abandoned his children or fails to visit them for protracted periods of time or contribute to their support, where continued use of a name may bring shame and disgrace, where the physical welfare of the child may be adversely affected by a denial of the application ’ ’ the change of name should be permitted. And in Matter of Proman (63 N. Y. S. 2d 83) the same court held that when the father had seen his son only once in eight years and had not contributed anything to his support, the father has no genuine right in view of his conduct, to dispute the desire of the mother to change the name of the child.
The husband in the case at bar is presently incarcerated in Sing Sing Prison, serving a life sentence upon conviction of murder in the second degree and after exhausting appeals to the Appellate Division and Court of Appeals. The arrest, trial, sentence and appeals aroused wide notoriety, of the sensational type, because of the unusual features of the case. It has attracted the most distasteful kind of publicity. This naturally has brought shame, disgrace and distress to his family — to his wife and children and to his parents. The petitioner has stated that she does not believe that her husband is guilty of murder. However, she points out that by his own affidavit sworn to on February 8, 1965 (submitted in support of his motion for a new trial), he admitted adultery, his “ association with Gloria Kendal and her ilk ’ ’, and while denying any knowledge of the murder, he admitted participation in the removal from the apartment of a trunk, supposedly containing a corpse, after he was told by Gloria that Markowitz had been murdered.
The Appellate Division, in its opinion affirming the conviction, stated (p. 34): “ Defendant had long been addicted to betting substantial sums with book-makers. He also indulged in extensive association with prostitutes. It clearly appears that he not only contributed largely to the support of the Kendal woman, he also maintained the 63rd Street apartment for extramarital activities. * * * The jury might well have found that the defendant, having chosen to inhabit the half-world that he did, would be subject to the stresses, and the methods of relieving *1018 them, that are more common to its denizens than to those whose activities conform more strictly to conventional standards.” The Court of Appeals in its affirmance stated (p. 167): “ The defendant is a businessman with a wife and three children living in comfortable circumstances but also addicted to gambling and association with prostitutes. He maintained an apartment on 63rd Street under the fictitious name of ‘ Weissman ’ for his extramarital activities and contributed large amounts to the support of a prostitute known by numerous aliases but hereinafter referred to as Gloria Kendal. Gloria, who procured. entertainment for defendant’s friends as well as engaging in prostitution herself, was the primary witness for the prosecution. ’ ’
There is no question but that his “ extensive association with prostitutes ”, his “ extramarital activities ”, his “addiction to gambling ” represent acts of gross misconduct and the most flagrant violations of his duties as a husband and father. His actions alone and misconduct, as memorialized in our law reports (24 A D 2d 32 and 18 N Y 2d 162), have produced great shame, agony and disgrace to his wife and children. Even were his appeal to the United States Supreme Court to result in a reversal of his conviction for murder, nothing will change the fact that his “way of life” and “dissolute existence” have been responsible for the resultant stigma, the continuation of which is unfair to the children. To retain the father’s name would “adversely affect their best interests.” The court is not even stressing the fact that the father has made no effort or arrangement to support the infants nor contributed towards their support since the date of his arrest in February, 1964.
In view of the sinister and sordid details of the father’s past life, ‘ the sins of the father should not be visited upon the children ’ ’. They are the innocent victims. They are entitled to emerge into life in a clean, fresh and wholesome atmosphere, untainted by a blemished past, over which they had no control. There is a “ compelling” reason for the change.
Having in mind the emotional well-being, health, social development and welfare of the children, it is the considered opinion of this court that the interests of the infants will be substantially promoted by the change of name sought. The application is granted. Submit long-form order.
Upon request of the husband and his father, and there being no objection by the wife, it is ordered that the papers be sealed.