## WEST *v.* WRIGHT ET AL. ETC.

[No. 51, September Term, 1971.]

*Decided November 9, 1971.*

298

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Abel J. Merrill,* with whom were *Albert J. Goodman* and *Goodman, Bloom & Merrill* on the brief, for appellant.

No brief filed on behalf of appellees.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Anne Arundel County where Judge Wray, sitting in equity, decreed that the surname of two young children be changed to the last name of their stepfather. The controversy really originated in 1961 when appellant, Jack Curtis West and his former wife, the appellee, Evangelene Kennedy Wright were divorced. At that time Mrs. Wright was given custody of the two children, Todd Curtis West, who is now twelve years old and his younger brother, Phillip Jay West, now eleven. The father was given visitation rights and required to make monthly support payments, which he has done punctually and without fail. Both parents remarried and the mother moved to Maryland, about 300 miles from her former husband. This distance has proved a major impediment to the frequency of visits between father and sons. Mr. West works six days a week and it is very difficult for him to come to Maryland. Similarly it is hard for the boys to stay with their father in Pennsylvania, because his home is quite small and he has two children of his subsequent marriage. However, the appellant does man-

age to spend at least two to three days a year with Todd and Phillip, some times more, taking them fishing or swimming, and being with them several hours each of those days. This he does when the children visit their grandparents (both his and Mrs. Wright's parents). The father does not often call or write his sons, explaining that until now they were very young and could not "carry on a conversation over the telephone or writing"; but he does maintain contact by sending them presents on their birthdays and at Christmas. He has also designated the boys as beneficiaries of life insurance policies and bonds and Mr. West wants this property inherited under his surname.

Mrs. Wright, the mother, says that since she remarried, the children have been embarrassed that their last name differs from hers. She claims that they have been teased by classmates and have even been involved in fights because of this.

The trial judge concluded that it would best serve the interests of the boys to allow the name change. He based his decision solely on the sparsity of the communication between the father and his sons, as well as "the cruelty of children to other children who are 'different.' " Mr. West contends on appeal that Judge Wray was in error in concluding that these circumstances justified a change of name. We agree and reverse the trial judge's decree.

This is a case of first impression in Maryland, but the rule in other courts has been to look at what is in the best interests of the child before determining if a name change is warranted. *Degerberg v. McCormick,* 41 Del. Ch. 46, 187 A. 2d 436 (1963) ; *Mark v. Kahn,* 333 Mass. 517, 131 N.E.2d 758, 53 A.L.R.2d 908 (1956) ; *Kay v. Kay,* 51 Ohio Op. 434, 65 Ohio L. Abs. 472, 112 N.E.2d 562 (1953) ; *Clinton v. Morrow,* 220 Ark. 377, 247 S.W.2d 1015 (1952). However, courts are also most reluctant to allow such a change except under extreme circumstances. As the New York court said in *Application of Yessner,* 61 Misc. 2d 174, 304 N.Y.S.2d 901, 903

(1969) ". . . to deprive the son of his father's surname is a serious and far-reaching action . . . the father has a natural right to have his son bear his name and . . . the court should not endeavor to interfere with the usual custom of succession of paternal surname nor foster any unnatural barrier between father and son." *Application of Keach,* 51 Misc. 2d 1097, 274 N.Y.S.2d 938 (1966), *Lazow v. Lazow,* 147 So. 2d 12 (Fla. 1962); 53 A.L.R.2d 914; *cf. Watson v. Dockett,* 229 Md. 63, 181 A. 2d 461 (1962). Nevertheless, the father's right to perpetuate his name in his son is certainly not absolute; it can be forfeited by conduct inimical to the child. *Application of Yessner, supra.* "The sins of the father should not be visited upon the children",[1] *Application of Fein,* 51 Misc. 2d 1012, 274 N.Y.S.2d 547 (1966).

Courts of our sister states have usually made inquiries along the following lines in deciding cases involving a name change of minor children:

> 1. Is there any proof of misconduct by the natural father which might make the continued use of the name by his children shameful or disgraceful?
>
> 2. Has the father wilfully abandoned or surrendered the natural ties between himself and his children?

*Application of Keach, supra* at 940; *Degerberg v. McCormick, supra* at 439; *Sobel v. Sobel,* 46 N.J. Super. 284, 134 A. 2d 598 (1957). In addition some courts have also taken into account other factors such as the age of the children involved and in one case even went into an elaborate discussion of whether a name per se was embarrassing. *Worms v. Worms,* 252 C.A.2d 130, 60 Cal. Rptr. 88 (1967).

We agree with the utilization of these general consid-

---

1. This quote is apparently an offspring of Exodus 20:5 where it is said: "For I the Lord Thy God am a jealous God, visiting the iniquity of the fathers upon the children unto the third and fourth generation of them that hate me."

erations and will analyze the facts of the present case accordingly. The most prevalent basis for allowing a change of name is where there is proof of serious misconduct by the father which adversely affects the best interests of his children. In *Application of Fein, supra,* the New York court allowed a name change because the father was serving a life sentence in prison for second degree murder. The court said at page 554: "The arrest, trial, sentence and appeals aroused wide notoriety, of the sensational type, because of the unusual features of the case. It has attracted the most distasteful kind of publicity. This naturally has brought shame, disgrace and distress to his family." In *Application of Yessner, supra,* the New York court came to the same result when the father was convicted of manslaughter for choking the child's maternal grandfather to death. In *W. v. H.,* 103 N.J. Super. 24, 246 A. 2d 501 (1968) the New Jersey court allowed a name change in a case where the father was in prison for having sexual intercourse with his eleven year old daughter. There are no hard and fast definitions as to the type of misconduct required; however, the offense must be of such great magnitude that the continued use of the name by the children would result in significant harm or disgrace to them. In the present case we are not faced with this issue since it is not even suggested that Mr. West has been guilty of any misconduct.

The other factors to be considered all relate to whether a father has wilfully abandoned his children and severed natural ties with them. Applying this criterion here, we again do not find appellant wanting. He has always maintained his support payments promptly and while it is true that he does not see his children frequently, the court must consider this in terms of Mr. West's capabilities. He works six days a week, lives in a small house and because his former wife moved away, is separated from his sons by 300 miles. The fact that under these circumstances he arranges to spend but a few days with his

children each year does not show a lack of diligence on his part; rather it is the sad but true result of the practical limitations with which he is faced. It would be most unjust to penalize him for his small abode or the duration of his work week. In fact, the time he spends with his children shows a desire on his part, despite many obstacles, to maintain ties with them. It is clear he has not abandoned them. There is no evidence to indicate that Mr. West has done or failed to do anything justifying the allowance of a change of name by the court.

The appellee argues that since the last name of the children is different than hers, it is a source of constant embarrassment to them all. Our careful review of the record in this case discloses the mention of some minor skirmishes with playmates, not uncommon to children of that age, and some slight clerical mixups with doctors' records. However, these minimal instances of embarrassment would certainly not merit so drastic an action as a name change. Indeed, in a country in which nearly 25% of all marriages in a given year involve previously married people, it is not an unusual occurrence to have children and parents living together with different last names.[2] Of course the courts in arriving at a decision must apply a subjective test, not unlike that used in adoption proceedings. *Beltran v. Heim,* 248 Md. 397, 236 A. 2d 723 (1968). But in this case any embarrassment is

2. According to the U.S. Dep't of Health, Education and Welfare, Public Health Service, Monthly Vital Statistics Report, Vol. 20, No. 4 Supp. July 22, 1971, out of a total of 1,525,000 marriages in 1960, 333,000 involved remarriage of the bride and 317,000 involved remarriage of the groom. In 1969, out of 1,660,547 marriages reported by 40 states, 378,349 involved remarriage of the bride and 380,930 remarriage of the groom. During the period 1961-1969, which includes the year of the divorce in the present case, 5,847,000 children were involved in divorces and annulments.

It is also interesting to note that not only are marriages increasing, but divorces are increasing at a much higher percentage than is the population itself.

| | | |
|---|---|---|
| In 1960 there were: | 1,525,000 | marriages |
| | 393,000 | divorces |
| In 1969 there were: | 2,145,438 | marriages |
| | 639,000 | divorces |
| In 1970 provisional figures indicate | 2,179,000 | marriages |
| | 715,000 | divorces |

clearly outweighed by the desirability of maintaining some bond between a father and his offspring; a bond which incidentally may be quite tenuous in a situation where the parents are divorced and the mother has custody of the children. *Mark v. Kahn, supra,* 333 Mass. 517, 521, 131 N.E.2d 758, 762. To allow the change of name would cause more erosion in an already precarious relationship.

> *Decree reversed and case remanded for passage of an order dismissing the petition.*
>
> *Costs to be paid by Evangelene Kennedy Wright.*