236 S.E.2d 426 (1977)
PETITION for Change of Name of Cynthia Louise HARRIS to Cynthia Louise Struble.
PETITION for Change of Name of James Edward HARRIS III to James Paul Struble.
Nos. 13840, 13841.
Supreme Court of Appeals of West Virginia.
June 21, 1977.
Concurring Opinion July 27, 1977.
*427 William B. Carey, Berkeley Springs, for petitioner.
NEELY, Justice:
The Court granted these two appeals and consolidated them for decision in order to settle the law in this State on the right of a divorced woman with minor children to change her name and the right of the guardian of a minor child to have the child's name changed.
Cynthia Louise Harris petitioned the Circuit Court of Morgan County in August 1976, to change her name from Cynthia Louise Harris to Cynthia Louise Struble. She alleged that she had been married to James Edward Harris, Jr. and that by order of the Circuit Court of Manatee County, Florida, she was divorced from James Edward Harris, Jr. but that the divorce order did not restore her maiden name of Struble. At the same time Cynthia Louise Harris petitioned the Circuit Court of Morgan County to change the name of her minor son, James Edward Harris, III, who was in her custody, to James Paul Struble. Notice of both of these proposed name changes was published in The Morgan Messenger, a newspaper of general circulation in Morgan County, as legal advertisements and both appeared for two consecutive weeks in compliance with W.Va.Code, 48-5-1 [1969].[1]
The circuit court denied both petitions. In the case of Mrs. Harris, the circuit court denied the petition on the grounds that the court granting her divorce had declined to restore her maiden name because she had a minor child, and in the case of the child, James Edward Harris, III, the court denied the petition on the grounds that to grant the name change the court would, "in effect bastardize this child."

*428 I
We recognize that W.Va.Code, 48-2-23 [1969] provides that a court, upon granting an annulment or divorce, may restore a wife's maiden name or the name of a former husband if the woman has no living children.[2] This Code section, by its terms, precludes restoration of a wife's maiden name in a divorce proceeding if there are living children of the marriage. However, W.Va.Code, 48-5-1 [1969] provides that any person may change his or her name, or that of his child or ward.
The Court finds that W.Va.Code, 48-5-1 [1969] does not exclude a divorced wife with living children from its provisions, and accordingly the Court holds that any woman who has been divorced, notwithstanding the fact that she has living children by that marriage, may petition either to have her maiden name restored or to change her name to some other name under the provisions of W.Va.Code, 48-5-1 [1969] et seq., and she has an absolute right to such change if there are otherwise no impediments under W.Va.Code, 48-5-3 [1969], notwithstanding Code, 48-2-23 [1969].

II
The question of whether Mrs. Harris' petition to change the name of her infant son should have been granted is more difficult. This is a case of first impression in West Virginia and does not admit to an easy solution. It is a classic case for the application of equitable principles. W.Va.Code, 48-5-1 [1969] specifically provides that any person may apply to the circuit court for a change of name of his or her child or ward, but is silent about what criteria should guide the judge's discretion in determining whether it is in the best interest of the child to permit such name change.
We are concerned at the outset lest a valuable parental right be terminated in a cavalier and careless manner. We do not believe that the drafters of Code, 48-5-1 [1969] contemplated petitions to change the names of children when there were living, interested fathers, although it does not preclude such petitions. We hold that the statute permits such petitions; however, under our general powers over procedure in courts of equity we hold that before a court can proceed to consider a petition for a change of name when there is a living father, actual notice must be given to the father if his whereabouts are known or with reasonable diligence could be ascertained.
Jurisdictions which have considered the question of whether the name of a child with a living father can ever be changed are in conflict with regard to its proper resolution.[3] We choose to follow the line of cases which hold that where the best interest of the child will be served by a change of name, such change may be granted. However, we make a strong distinction between *429 situations where the father is exercising in any way his parental rights, or exercised such rights before he died, and situations where a father, living or dead, has abandoned all parental rights and responsibilities. In the former situation of active parents, the evidence must be far stronger with regard to benefits to the child, to justify a name change.
A father's interest in having his children bear his name is a valuable and protectable interest, although it is not a property right nor such an interest as cannot be taken away from the parent, if the best interest of the child will be served. Re Application of Seif, 40 Misc.2d 596, 243 N.Y. S.2d 172 (1963); Worms v. Worms, 252 Cal. App.2d 130, 60 Cal.Rptr. 88 (1967); and Eschrich v. Williamson, 475 S.W.2d 380 (Tex.Civ.App.1972). The law imposes upon a male parent an obligation to support his children while both morality and social convention demand that a father concern himself with the welfare of his children even if he is divorced from the children's mother and does not have custody of the children. Long-standing social convention has made the surname of a child the same as that of the father. See D. L. Fuller "Domestic Relations  The Right of a Married Woman to Retain Her Maiden Name," 79 W.Va.L. Rev. 108 (1977). There are many practical considerations which even today militate in favor of this tradition. For example, a surname common to both parent and child makes it easier to demonstrate a legal relationship for the purpose of qualifying for benefits with the Social Security Administration upon the death of the father, as an heir in the event of intestate succession, or as the beneficiary of certain types of group insurance policies such as "G.I. Insurance" where the beneficiaries are established by law unless specifically changed by the insured.
In addition, in areas where families live in a given county for successive generations, a family name may be a substantial financial asset. A well-regarded and trusted member of a community may pass on to his children a certain presumption with regard to honor, integrity and fair dealing based upon the conduct of the parents. Regardless of the relationship between the parents, this can be a valuable asset to the children. It may give the children a substantial edge in life when they seek credit, employment, or admission to tightly controlled union, trade, or professional groups. Of course, all of these benefits could theoretically pass through the female line as well as the male line, but it is not customary. People expect children to bear the surname of their fathers, and as the circuit judge in one of the cases before us so ably pointed out, a child's bearing a woman's maiden name does give fair indication that the child is illegitimate. This may not be the way things ought to be; however, at this stage of our development, it is the way things are. Our analysis is descriptive, not normative; but the law must work with reality, not fancy or ideology. The weight of authority appears to be that absent extreme circumstances a father who exercises his parental rights has a protectable interest in his children bearing his surname and this interest is one quid pro quo of his reciprocal obligation of support and maintenance. In this regard we follow the reasoning of Mark v. Kahn, 333 Mass. 517, 131 N.E.2d 758 (1956).
Accordingly we hold that where a father is supporting his child, takes an interest in the child's welfare, and is in any way performing the parental responsibility which both the law and social norms impose upon him, or where a father who has exercised his parental rights and discharged his parental responsibilities is dead, the name of the child may not be changed absent a showing by clear, cogent, and convincing evidence that such change will significantly advance the best interests of the child. We can envisage a case, for example, in which the father of a child were such a notorious criminal, notwithstanding the fact that he may be a good father, that the child's bearing a common surname with him would create such a stigma or embarrassment that the child's mental health would be jeopardized or his or her opportunities in life *430 narrowly circumscribed. We do not feel, however, that mere convenience or dislike on the part of the guardian or child of his surname is sufficient reason for a change where a father has exercised his rights.
Where a father abandons his children, provides no support and maintenance, does not visit the children, and does not in any other reasonable way, given his position in life and the opportunities for the exercise of his parental rights, exercise the authority or undertake the responsibilities of a parent, there is no reason why a mother or other guardian should not be able to change the name of the child, upon proper notice to the father. Under these circumstances the child would then have the advantages of a common name with his or her parent or guardian, and many of the advantages which we have outlined above which by tradition pass through the male line, in default of such opportunity for passage, would pass through the female line. Furthermore, we would not be concerned with the father's protectable interest because he would have waived such interest by abandonment.
The case before us involves a factual situation where a woman wishes to change the name of her child to her maiden name. We do not intend by our broad holdings in this case to enlarge the use of the statute permitting a change of name to permit a woman upon remarriage to divest a father of the appearances of parental affiliation thus circumventing in many respects the provisions of W.Va.Code, 48-4-1 [1976], concerning adoption, and in no event shall proof of abandonment for name change purposes be less than that required to divest a father's parental rights under the adoption statute.
Accordingly, for the reasons set forth above the judgments of the Circuit Court of Morgan County are reversed in both proceedings and both proceedings are remanded with directions to hold hearings and enter orders consistent with this opinion.
Reversed and remanded.
HARSHBARGER, Justice, concurring:
I concur with the Court's opinion. I would add, however, that there is ample authority to support the Court's determination that a woman whose marriage has been dissolved by divorce or annulment should have an absolute right, absent fraudulent intent, to resume a former name or adopt a new name regardless of whether there are living issue from the marriage.
The common-law rule was that a person could change his or her name without legal proceedings provided there was no fraudulent purpose in doing so. When a woman married, she acquired her husband's surname by repute, the change of name being in fact, rather than in law, a consequence of the marriage. Stuart v. Board of Supervisors, 266 Md. 440, 295 A.2d 223 (1972). In Petition of Hauptly, 262 Ind. 150, 312 N.E.2d 857 (1974), the court interpreted the Indiana statutory name change procedure. It found no requirement that any person go through the courts to establish a legal change of name. The statutory procedure simply provided for an orderly record of name changes to avoid future confusion. The court stated, "The only duty of the trial court upon the filing of such a petition is to determine that there is no fraudulent intent involved. Once having so found, we hold that it is an abuse of discretion to deny any application for a change of name under the statute [IC 34-4-6-1, Burns' Ind.Stat. Ann., 1972 Supp., § 3-801]." 312 N.E.2d at 860.
I believe this analysis is applicable in interpreting W.Va.Code, 48-5-1 through -3, and that a trial court's discretion to proscribe a legal name change should be construed narrowly. See Kruzel v. Podell, 67 Wis.2d 138, 266 N.W.2d 458, 67 A.L.R.3d 1249 (1975); Custer v. Bonadies, 30 Conn. Supp. 385, 318 A.2d 639 (1974); State ex rel. Krupa v. Green, 114 Ohio App. 497, 177 N.E.2d 616 (1961). See generally, Annot., 67 A.L.R.3d 1266 (1975).
Furthermore, it is my opinion that W.Va. Code, 48-2-23, violates the equal protection clause of the Fourteenth Amendment to the United States Constitution by arbitrarily *431 and unreasonably precluding divorced women with children from restoring their maiden names or surnames from a previous marriage, but allowing married women without issue from the dissolved marriage to do so.
Finally, I believe the Court's opinion is unduly myopic in its descriptive analysis of "the way things are" vis-a-vis a father's protectable interest in having his child perpetuate his family name. I believe it is indeed fanciful to presume that, when a marriage is dissolved, payment of child support, exercise of visitation rights by a father without custody, and a concern for the child supplies the quid pro quo of this so-called protectable interest in securing the paternal surname.
It is a strained and superannuated perception of contemporary social reality which presumes that children's best interests are served by welding paternal surnames to them upon a superficial showing that their fathers have discharged their minimal legal and social obligations to them. I can readily envisage a situation where a child resides with the mother, and the mother's efforts contribute in major part to the quality of his or her life over and above the provision of necessities both financial and emotional. The probability is more than theoretical that in many instances the maternal surname would best ensure the community presumption of honor, integrity and fair dealing which the majority opinion notes is a valuable asset to a child. I do not believe, nor does the law dictate, that what is customary is synonymous with what is best.
A more reasonable and equitable approach in petitions to change minors' surnames would be to ascertain their best interests by weighing the contributions by both parents that promote the children's health and well-being, including the degree of beneficial community standing derived from either the maternal or paternal surname, if any.
It may be said that such an attitude is emasculating to male ego. But in my opinion the right of a woman to participate equally with a man in determining the label of their bloodline when the nuptial knot is undone should not, if a man is half a man, diminish his investment in effort toward his children's lives. I doubt the exclusivity of the qualities of character building, love and pride ascribed to and supposed to spring from the paternal prerogative.
My brother MILLER joins in this opinion.
NOTES
[1] Code, 48-5-1 [1969] provides:

Any person desiring a change of his own name, or that of his child or ward, may apply therefor to the circuit court or any other court of record having jurisdiction of the county in which he resides, or the judge thereof in vacation, by petition setting forth that he has been a bona fide resident of such county for at least one year prior to the filing of the petition, the cause for which the change of name is sought, and the new name desired; and previous to the filing of such petition such person shall cause to be published a notice of the time and place that such application will be made, which notice shall be published as a Class I legal advertisement in compliance with the provisions of article three [§ 59-3-1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the county.
[2] Code, 48-2-23 [1969] provides:

The court upon granting an annulment or divorce to the husband or wife may if there are no living children of such marriage allow the wife to resume her maiden name. The court may also allow the wife to resume the name of a former husband if she has any living child or children by her marriage to such former husband.
[3] In resolving this question, most courts attempt to take a child's best interests into consideration. This tendency appears both in cases where the child lost his father's surname and where the child retained his father's name by the court's denial of the name change request. In the latter category is Lazow v. Lazow, 147 So.2d 12 (Fla.App.1962), which holds that the record must affirmatively show that the child's welfare would be served by changing his name to one other than his father's. See also Robinson v. Hansel, 223 N.W.2d 138 (Minn. 1974); Application of Wing, 4 Misc.2d 840, 157 N.Y.S.2d 333 (1956); Application of Baldini, 17 Misc.2d 195, 183 N.Y.S.2d 416 (1959); Re Application of Seif, 40 Misc.2d 596, 243 N.Y.S.2d 172 (1963); Plass v. Leithold, 381 S.W.2d 580 (Tex.Civ.App.1964); Application of Trower, 260 Cal.App.2d 75, 66 Cal.Rptr. 873 (1968).

For cases in which courts granted a name change request, but only after giving substantial attention to the child's best interests, see Don v. Don, 142 Conn. 309, 114 A.2d 203 (1955); Application of Fein, 51 Misc.2d 1012, 274 N.Y.S.2d 547 (1966); Johnson v. Coggins, 124 Ga.App. 603, 184 S.E.2d 696 (1971); In re Russek, 38 Ohio App.2d 45, 312 N.E.2d 536 (1974); Newman v. King, 433 S.W.2d 420 (Tex. 1968); W. v. H., 103 N.J.Super. 24, 246 A.2d 501 (1968).