640 S.E.2d 96

**In re The Petition of Blake A. CARTER, A Minor, by Christina M. Karawan for Change of Name to Blake A. Karawan.**

No. 33064.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 20, 2006.

Decided: Nov. 9, 2006.

Dissenting Opinion of Justice Benjamin Dec. 14, 2006.

34

John A. Proctor, Esq., Underwood Law Offices, Huntington, for Appellant.

Julia B. Shalhoup, Esq., Charleston, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on August 26, 2005. In that order, the circuit court held that reasonable and probable cause existed for changing the name of Blake Andrew Carter, a minor, to Blake Andrew Karawan. In this appeal, Blake Carter's biological father, appellant Kenneth Carter, maintains that the circuit court erred when it granted the name change. Blake, through his mother, Christina Karawan, contends that the circuit court correctly allowed him to change his name. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court reverses the decision of the circuit court.

## I.

## FACTS

The appellant, Kenneth Saunders Carter, and the appellee, Christina Marie Karawan, were divorced on October 25, 1991, when their son, Blake Andrew Carter, was approximately one year old. Ms. Karawan was awarded custody of the child and the divorce decree provided that Mr. Carter would pay child support in the amount of $134.15 per month. Mr. Carter actually paid $150.00 per month to Ms. Karawan throughout the years. Mr. Carter was also required to advise Ms. Karawan each month as to his employment status and his monthly or weekly earnings. Mr. Carter, however, did not comply with this requirement.

On August 4, 2005, Ms. Karawan, on behalf of her son Blake, petitioned the Circuit Court of Kanawha County to change his name from Blake Andrew Carter to Blake Andrew Karawan. Blake indicated that he wanted the name change because he desired to have the same surname as his mother, sister, and step-father. He further claimed that his step-father, Mr. Karawan, was the only father he had ever known and that he did not have any memories of his biological father and did not wish to keep his surname. He also expressed that he wanted his driver's license, school records, school yearbook, as well as any other legal documents to reflect his name as Blake Andrew Karawan.

During the proceedings below, Mr. Carter claims that he visited Blake on his first birthday and several times thereafter. The circuit court's August 26, 2005, order, however, concluded that Mr. Carter had not in fact visited with his son or had any contact with him for more than thirteen-and-one-half-years. Mr. Carter states that his difficulty in maintaining a civil, cooperative relationship with Ms. Karawan frustrated his attempts to visit with his son. Nonetheless, Mr. Carter at no time made any effort to enforce his visitation rights through the legal process.

On August 26, 2005, the Circuit Court of Kanawha County found that the only act by Mr. Carter evidencing an exercise of his authority or responsibility as a parent was his court-ordered payment of child support. The circuit court further found that Mr. Carter had not visited or contacted his son for more than thirteen-and-one-half-years; had not maintained health insurance coverage for his son as ordered by the court; had not shared equally the costs of health care not covered by insurance as ordered by the court; had not telephoned his son or sent his son Christmas presents or cards; had never sent his son a birthday card or present; and made no attempt whatsoever to communicate with his son. The circuit court specifically found that "other than paying court-ordered child support, [Mr. Carter] has not performed any act evincing an interest in, or love for, his child, or any other conduct consistent with the acts and conduct of a father who has interest in his child, notwithstanding the fact he has not been prevented in any way from doing so for approximately 13½ years." The circuit court then concluded that Ms. Karawan demonstrated by clear, cogent, and convincing evidence that a name change would significantly advance the best interests of the child and granted Ms. Karawan's petition for changing her son's last name. Mr. Carter subsequently appealed the circuit court's order.

## II.

### STANDARD OF REVIEW

In this case, Kenneth Carter contends that the circuit court erred in granting a name change petition to his biological son Blake Carter. We previously have held that our review of a circuit court's order is varied:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). *Accord* Syllabus Point 1, *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997).

Moreover, where, as here, the question before the circuit court involves the interpretation of the applicable law and governing statutes, our review is plenary. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *See also* Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

With these standards in mind, we now determine whether the circuit court erred by granting the petition to change Blake's name.

## III.

### DISCUSSION

In this case, Mr. Carter states that the law in West Virginia is quite clear that in deciding whether the best interests of a child will be served by a name change, that the evidence supporting a change must be "far stronger with regard to benefits to the child" unless the father "has abandoned all parental rights and responsibilities." *In re Harris,*

160 W.Va. 422, 426, 236 S.E.2d 426, 429 (1977). Moreover, "[A]bsent extreme circumstances a father who exercises his parental rights has a protectable interest in his children bearing his surname and this interest is one *quid pro quo* of his reciprocal obligation of support and maintenance." *Id.* at 427, 236 S.E.2d at 429.

Mr. Carter claims that by his son retaining his name it would allow him to foster a relationship between himself and his son. He also states that he has continued to pay child support for his son throughout the years and maintains that he desires a relationship with him. He further believes that the only concrete evidence suggesting that a name change would be in his son's best interest is the fact that there has been minimal contact between Mr. Carter and Blake. Mr. Carter, however, contends that there is absolutely no evidence that he has ever said anything to suggest that he does not love his son or does not want a relationship with him. Mr. Carter explained to the circuit court that:

> As you get older, life gets a little more precious to you. And you know, I'm 42, and I don't have any other children. He's my only son. And I just, he's a part of me even if I haven't been around. . . .

> I hoped that if his name was Carter he would get curious when he started to hit his teenage years and want to, at least, talk to me or see me or something like that. That's been my hope.

Mr. Carter also said that he contacted Mr. Karawan after Blake started the first grade and the two of them discussed whether Mr. Carter could come to visit with Blake. Mr. Carter said that,

> Mr. Karawan made a very good point that [such a visit] would be disruptive. Maybe, it should be more, maybe if Blake wants to come to me sometime. So we agreed at that time that maybe that was the best strategy. . . .

> I was a product of divorce, Your Honor, and my father used to say bad stuff about my mom. And I just wasn't going to do that to Blake. I was not going to make waves in his life. I don't want to be dis-

ruptive. But he [is] my only son. I don't have any other children.

Mr. Carter further testified as follows:

> I certainly brought up the issue of visitation on the name change when [Blake] started 1st grade. We agreed in the welfare of the child that, maybe, I shouldn't interfere at that young age. That would be confusing. I used to work on adolescent psych. And I understand all about stability.

> I had scheduled visitations, and she quit being available on those days. She had other plans. I lived in Huntington, she at Charleston. I'd call her, and she said, oh, we have plans. You don't mind do you?
> . . . .

> I discussed with them that I was trying not to make waves, but I was still waiting for that opportunity. I hoped that if his name was Carter he would get curious when he started to his teenage years and want to, at least, talk to me or see me or something like that. That's been my hope.

> I've tried not to make waves. I paid my support. I've just stayed in the background. I've always been a letter away. I've always responded whenever a call or letter came in there, I mean. So, anytime I've been contacted, I've returned, but I just wasn't going to fight any more.

■ West Virginia Code § 48–25–101 (2003) affords individuals of this state the ability to petition a circuit court or family court for a change of name. It provides that:

> (a) Any person desiring a change of his or her own name, or that of his or her child or ward, may apply therefor to the circuit court or family court of the county in which he or she resides, by petition setting forth:

> (1) That he or she has been a bona fide resident of the county for at least one year prior to the filing of the petition;

> (2) The cause for which the change of name is sought; and

> (3) The new name desired.

> (b) Previous to the filing of the petition the person shall cause a notice of the time and place that the application will be made to be published as a Class I legal adver-

tisement in compliance with the provisions of article three, chapter fifty-nine of this code. The publication area for the publication is the county.

In Syllabus Point 3 of *In re Harris*, 160 W.Va. 422, 236 S.E.2d 426 (1977), however, we explained that: "Children bear the surnames of their fathers by custom and usage in this society, and where a father who has exercised his parental rights and discharged his parental responsibilities is dead, or a living father exercises his parental rights and discharges his parental responsibilities, the name of a minor child cannot be changed from that of the father unless upon proper notice and by clear, cogent, and convincing evidence it is shown that such change will significantly advance the best interests of the child."

In *Harris*, we further stated that absent extreme circumstances, "in no event shall proof of abandonment for name change purpose be less than that required to divest a parent's rights under the adoption statute." 160 W.Va. at 429, 236 S.E.2d at 430. Pursuant to W.Va.Code § 48–22–102, abandonment is defined as "any conduct by the birth mother, legal father, determined father, outsider father, unknown father or putative father that demonstrates a settled purpose to forego all duties and relinquish all parental claims to the child." In addition, W.Va.Code § 48–22–306 (2001) [1] provides that there is no presumption of abandonment unless, among other things, a father fails to financially support his child.

After reviewing the facts of this case, we believe that Mr. Carter has not abandoned all duties of a father and the evidence does not support the circuit court's conclusion that Mr. Carter demonstrated "a settled purpose to forego all duties and relinquish all parental claims." Because Mr. Carter has regularly paid child support and has expressed his sincere desire to forge a relationship with his biological son, we believe that the request for a name change in this case should not be granted as it is not in the best interests of the child. We further recognize that Blake will become an adult within two years of the issuance of this opinion at which time he will be in a better position to make a decision about which surname would be in his best interests. *See* W.Va.Code § 48–25–101 (2003).

Consequently, we find that the circuit court abused its discretion in ordering a name change in this case and therefore reverse the August 26, 2005, final order of the circuit court.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on August 26, 2005, is reversed.

Reversed.

BENJAMIN, Justice, dissenting.

The circuit court focused squarely on the bests interests of the child. It followed the law. It did not abuse its discretion. It did not commit clear error in its findings of fact. Accordingly, I dissent from the majority opinion.

This case is fact-driven. Judge Zakaib, below, saw the facts very clearly. Young Blake wished to be legally recognized as Blake Karawan after he was essentially abandoned by his biological father, who had made no real attempt to be a part of Blake's life for more than thirteen-and-a-half years. Only when he faced the prospect, and I presume the personal embarrassment, of his own son seeking to change his name to that of his step-father did Mr. Carter rediscover his desire to have a fatherly relationship with

---

1. W.Va.Code § 48–22–306, in part, provides:
    (a) Abandonment of a child over the age of six months shall be presumed when the birth parent:
    (1) Fails to financially support the child within the means of the birth parent; and
    (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

Blake. Judge Zakaib did not believe that Mr. Carter's lately-formed sincerity was genuine and I do not believe Judge Zakaib was clearly wrong in that determination.

The majority concludes that a name change is not in Blake's best interests "[b]ecause Mr. Carter has regularly paid child support *and has expressed his sincere desire to forge a relationship with his biological son....*" Majority opinion at 9. (Emphasis added.) The record simply does not support Mr. Carter's claimed sincerity. All of the facts were taken by the circuit court and appropriate findings of fact were made. The circuit court found the facts to favor Blake's name change as being in his best interests. In ruling against Blake, the majority supplants the circuit court's findings with factual conclusions more to its liking and simply ignores the clearly erroneous standard which should control our review of this appeal. Syl. Pt. 2, *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

A review of the type of father Mr. Carter has actually been, rather than what he now claims he wants to be, is illuminating. In the now sixteen years since his son was born, Mr. Carter has never made any real attempt to get to know his son, to nurture his son, to care for his son, or to otherwise be a parent to his son. He has done nothing for Blake other than that which he had to do to avoid criminal sanction: he paid court-ordered child support in a minimal amount.

Mr. Carter took no steps to exercise his rights as a parent. He never petitioned to modify the custody order or to exercise his visitation rights. While he was absent from Blake's life, Blake's mother and step-father put a roof over Blake's head, fed Blake, clothed Blake, provided medical care for Blake, nurtured Blake, saw to Blake's education, and raised Blake to be the intelligent and articulate young man that he is today.

Mr. Carter apparently hopes that by forcing his son to retain the name "Carter", it will somehow now allow Mr. Carter to foster a relationship with Blake. He apparently expects that Blake will be curious about his natural father and will seek out a relationship with him as a teenager. Unfortunately,

Blake has made it clear to the circuit court what his wishes were. With the confidence and self-assurance of any adult, he articulated to the court that, while he understood and acknowledged that Mr. Carter is his biological father, Mr. Carter has never been a parent to him. Blake explained that he has always looked upon Mr. Karawan as his father and that he longed to be known by the same legal name as his mother, sister, and step-father.

To my mind, the record amply demonstrates that the factual findings of the circuit court were not clearly wrong nor were the conclusions the court drew from those facts wrong. While I acknowledge the standard expressed in *Harris,* I cannot agree that Mr. Carter has ever exercised his "parental rights and responsibilities" in the spirit of *Harris.* He chose to abandon any right he had to visit with and develop a parental bond with his son over the course of thirteen-and-one-half years. The only parental responsibility he exercised was that which he was legally required to do to avoid criminal sanctions. Being a father requires more. Blake's best interests deserve more.

As the circuit court amply found, Blake's best interests deserve more than the empty promises of his biological father. The circuit court correctly based its focus on the child's best interests—as should we. Unfortunately, the majority opinion, with its emphasis on Mr. Carter's "sincerity" and Mr. Carter's wishes, instead looks to Mr. Carter's best interests in deciding this case. In all other aspects, this Court has held the best interests of the child to be paramount. Syl. Pt. 1, *Petition of Nearhoof,* 178 W.Va. 359, 359 S.E.2d 587 (1987) ("A trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren pursuant to W. Va.Code, § 48–2–15(b)(1) [1986] or W. Va.Code § 48–2B–1 [1980], shall give paramount consideration to the best interests of the grandchild or grandchildren involved."); Syl. Pt. 5, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child."); Syl. Pt. 3, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996) ("Al-

though parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."); *In re Elizabeth A.*, 217 W.Va. 197, 203, 617 S.E.2d 547, 553 (2005)("Any evaluation pertaining to the rights of children must be guided by this Court's consistent recognition that a child's rights are paramount."). Accordingly, I respectfully dissent from the majority opinion.