617 S.E.2d 547

**In re: ELIZABETH A., Richard O. and Kimberly O.**

**No. 31761, 32166.**

Supreme Court of Appeals of West Virginia.

Submitted April 6, 2005.

Decided June 10, 2005.

Helen Beth Sears, Hancock & Sears, Ravenswood, West Virginia, Guardian ad Litem.

Teresa C. Monk, Deputy Chief Public Defender, Spencer, West Virginia, for Richard O.

Dennis H. Curry, Spencer, West Virginia, Attorney for Joann A.

Darrell V. McGraw, Jr., Attorney General.

William Jones, Assistant Attorney General, Charleston, West Virginia, Attorney for WV Department of Health & Human Resources.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM:

This Court has received two separate appeals by H. Beth Sears, guardian ad litem for Richard O., Jr., and Kimberly O.,[1] from two orders of the Circuit Court of Roane County dismissing abuse and neglect petitions based upon the lower court's conclusion that the allegations of sexual abuse were unfounded. This Court has consolidated the two appeals for consideration in this opinion. The guardian ad litem (hereinafter "Appellant") asserts that the lower court erred by failing to provide a full and adequate opportunity for the development of evidence in these matters. Having thoroughly reviewed the briefs of the parties, all matters of record, and applicable precedent, this Court is of the opinion that the lower court's dismissal of the Department of Health and Human Resources' (hereinafter "DHHR") abuse and neglect petitions was in error. Accordingly, we reverse the decisions of the lower court dismissing these matters and remand for further proceedings consistent with this opinion.

I. Factual and Procedural History

The first abuse and neglect petition in the case was filed on December 10, 2002, with an

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the last names of the parties. *See In re Jeffrey R. L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

amended petition filed December 13, 2002. In that first petition, allegations were raised concerning a sexually explicit letter allegedly written by Richard O. to his stepdaughter Elizabeth A., indicating that the two individuals had engaged in oral sexual activity. The petition asserted that Elizabeth A.'s mother, JoAnn, had found the letter and had obtained a domestic violence order, dated December 6, 2002, against Richard O.[2] The petition further alleged that Richard O. had engaged his stepdaughter, Elizabeth, and a cousin, Melody, in inappropriate sexual conversation while the three camped in a tent in the backyard of the family home. Richard allegedly brought pornographic magazines and beer to the tent and attempted to engage in sexual behavior with the girls. The mother later found a portion of a condom wrapper in the tent.

Three children, including Elizabeth A., Richard O., Jr., and Kimberly O.,[3] were removed from the home pursuant to an emergency petition. The mother, JoAnn, thereafter asserted that she had found a second letter ostensibly authored by Elizabeth indicating that the first letter had been written by Elizabeth to falsely implicate Richard O. as a sexual abuser.[4]

The lower court held adjudicatory hearings on this first petition in March and May 2003. Testimony was received from JoAnn regarding the condom wrapper in the tent, as well as both letters. JoAnn testified that she did not believe that Richard would sexually abuse Elizabeth or Melody. Richard testified that he had not had engaged in sexual contact with either girl. Melody, the cousin involved in the alleged incident in the tent, indicated that Richard had exposed himself in the tent. She also testified that although

Richard had touched her breast area on top of her clothing, no actual sexual intercourse occurred in the tent. Melody testified that she had no knowledge of either letter.

Elizabeth testified that Richard had given her the sexually explicit letter, telling her to read the letter and then burn it. She did not assert any knowledge concerning the basis for the assertions regarding oral sex that Richard made in the letter. She further testified that her mother had tried to convince her to protect Richard by claiming that she had written both letters. She also explained that she thought, based upon body positions, that Richard had sexual intercourse with Melody in the tent during the camping incident.

Janice Blake, a psychologist, testified that JoAnn had come to her office requesting assistance due to the sexually explicit letter she had found. Ms. Blake testified that JoAnn had informed her that she had spoken with Elizabeth about the letter and that Elizabeth had told her that Richard had sexually abused Melody in the tent. Ms. Blake then reported the situation to DHHR Child Protective Services.

On December 3, 2003, the lower court dismissed the first petition and ordered the children returned to their home. The lower court found that "[t]he testimony of two teenage girls was contradictory with one another [regarding whether Richard sexually assaulted Melody in the tent and] that this Court finds that the testimony is not worth [sic] of belief." The lower court further found that "[t]he petitioner has failed [to prove] by clear and convincing preponderance of evidence that the acts alleged in the petition oc-

2. JoAnn also apparently signed a protection plan with the DHHR, indicating that she would not drop the protective order and would ensure that Richard O. did not have contact with the children. On December 9, 2002, however, JoAnn asked that the domestic violence petition be dismissed.

3. Elizabeth A. was born on April 25, 1987, and was fifteen years of age at the time the first petition was filed in this case. She is currently eighteen years of age and will therefore not be directly affected by the outcome of this appeal. Richard O., Jr., was born on December 29, 1997,

and is currently seven years of age. Kimberly O. was born on January 25, 2000, and is currently five years of age. Elizabeth A. is the step-daughter of Richard O. Kimberly and Richard O., Jr., are the biological children of Richard O.

4. This second letter was printed from a computer that Richard and JoAnn immediately thereafter sold at a flea market for approximately one-half of its value. Although the computer had been used by the entire family, Richard allegedly used it to view pornography, and it was housed in Elizabeth's bedroom.

curred."[5] The lower court stayed that order pending an appeal to this Court by the Appellant.

While that first appeal was pending in this Court, additional allegations came to the attention of the DHHR, and thus, on April 5, 2004, the DHHR filed a second abuse and neglect petition. The second petition alleged that Richard had sexually abused Elizabeth in the summer of 2002 by forcing her to engage in oral sexual activity while Richard was teaching Elizabeth to drive. The Appellant explains that Elizabeth recalled these additional incidents with specificity by virtue of the fact that she was safely out of the abusive home and in counseling. Process Strategies psychologists David Clayman and Cherie Cowder interviewed Elizabeth regarding the allegations of abuse and also reviewed the letters. They found that Elizabeth's allegations were credible and that the two letters appeared to have been written by the same person, based upon grammatical errors and style.

A hearing was conducted by the lower court on April 12, 2004. Elizabeth testified that Richard had taken her on a country road to teach her to drive. When they stopped to urinate on the side of the road, Elizabeth contends that Richard forced her to lie down on the seat of the car and that Richard performed oral sex on her. Elizabeth explained that she had not informed the court about this incident of sexual abuse during the first abuse and neglect petition hearing "[b]ecause at the time I was in foster care and I was afraid I was going to go back home and if I did tell them nothing happened I'd go back home and I'd get hurt." Elizabeth stated that she was afraid Richard would beat her or do "something to Kimmy and Richard, II." Elizabeth further explained that she finally reported the abuse "[b]ecause when I told my foster mom about it I actually felt safe enough to where I could tell somebody and that I wouldn't, I knew that I wouldn't go back."

At the time of the April 12, 2004, hearing, the Appellant also filed a motion for a forensic maltreatment evaluation of Kimberly and Richard, Jr. The matter was continued to May 10, 2004, for further hearing. The hearing scheduled for May 10 did not occur, due to the lower court's decision to continue it.

On May 27, 2004, this Court granted the appeal of the dismissal of the first petition. The following assignments of error were submitted by the DHHR: (1) the lower court erred by dismissing the petition and ordering the return of the children to their home, and (2) the lower court erred by failing to terminate parental rights.

On July 22, 2004, the lower court dismissed the second DHHR abuse and neglect petition, finding that Elizabeth was not credible since she "forgot the event which gives rise to the allegations of sexual misconduct" by Richard. The lower court also denied "all pending motions herein as MOOT." On November 10, 2004, this Court granted the appeal of the dismissal of the second abuse and neglect petition. The Appellant asserts the following assignments of error in the second appeal: (1) the lower court erred by finding no probable cause and dismissing the second petition; (2) the lower court erred by denying the Appellant's motion for forensic child maltreatment evaluations for her clients without holding a hearing; (3) the lower court erred by finding that Elizabeth was not credible based upon her failure to articulate all abusive events in the first abuse and neglect proceeding; and (4) the lower court erred by failing to act in a timely fashion pursuant to Rules of Procedure for Abuse and Neglect Cases.

## II. Standard of Review

In syllabus point one of *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court explained as follows:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts with-

5. This Court will assume that the lower court's finding regarding insufficiency of the evidence contained a typographical error. The appropriate standard is clear and convincing evidence, rather than "clear and convincing preponder-

ance of evidence" as the lower court stated. *See* W. Va.Code § 49-6-2(c) (1996) (Repl.Vol.2004) ("The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof").

out a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

*See also* Syl. Pt. 1, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999); Syl. Pt. 1, *In re George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999). In *In re Emily*, 208 W.Va. 325, 540 S.E.2d 542 (2000), this Court explained that "[f]or appeals resulting from abuse and neglect proceedings, such as the case *sub judice*, we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." 208 W.Va. at 332, 540 S.E.2d at 549.

### III. Discussion

■ Any evaluation pertaining to the rights of children must be guided by this Court's consistent recognition that a child's rights are paramount. As this Court stated in syllabus point three of *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Within the abuse and neglect setting, this Court has also recognized the rights of children residing in the home, such as Kimberly and Richard, Jr., even where those children are not alleged to have been the direct victims of the abuse. In syllabus point two of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), this Court explained:

Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va.Code, 49-1-3(a) (1994).

■ Implementing these guidelines designed to protect the crucial interests of children, "this Court, over a substantial period of time, has expressed an unwavering interest in providing comprehensive and fair procedures for the consideration of abuse and neglect cases." *In re Edward B.*, 210 W.Va. 621, 632, 558 S.E.2d 620, 631 (2001). This Court emphasized as follows in *Edward B.*,

As this most important area of the law has expanded, this Court has insisted that the directives of applicable rules and legislative enactments must be carefully identified, respected, and incorporated within our court system. The Rules of Procedure for Child Abuse and Neglect Proceedings and the related statutes detailing fair, prompt, and thorough procedures for child abuse and neglect cases are not mere general guidance; rather, they are stated in mandatory terms and vest carefully described and circumscribed discretion in our courts, intended to protect the due process rights of the parents as well as the rights of the innocent children.

*Id.*, 558 S.E.2d at 631. In addressing the precise statutory requirements regarding the handling of abuse and neglect matters, this Court has explained that "[t]he statutory scheme applicable in child abuse and neglect proceedings provides for an essentially two phase process." *In re Beth Ann B.*, 204 W.Va. 424, 427, 513 S.E.2d 472, 475 (1998). "The first phase culminates in an adjudication of abuse and/or neglect. *See W.Va.Code* § 49-6-2(c) (1996). The second phase is a dispositional one, undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected. *See W.Va.Code* § 49-6-5 (1996)." *Id.*, 513 S.E.2d at 475 (footnote omitted).

■ During the proceedings in an abuse and neglect case, a guardian ad litem is charged with the duty to faithfully represent the interests of the child and effectively advocate on the child's behalf. In *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998), this Court explained that "guardians *ad litem* have a duty to fully represent the interests of their child wards at all stages of the abuse and/or neglect proceedings, both in the circuit court and on appeal." 202 W.Va. at 356 n. 11, 504 S.E.2d at 183 n. 11. In syllabus point four of *Christina L.*, this Court explained as follows:

> "Each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, *W.Va.Code*, 49-6-2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client." Syllabus Point 5, in part, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

194 W.Va. at 448, 460 S.E.2d at 694. The essential right to the opportunity to be heard is also expressed in West Virginia Code § 49-6-2(c) (1996) (Repl.Vol.2004), which provides, in pertinent part, as follows:

> In any proceeding pursuant to the provisions of this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses.

This Court also observed as follows in syllabus point three of *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996):

There is a clear legislative directive that guardians ad litem and counsel for both sides be given an opportunity to advocate for their clients in child abuse or neglect proceedings. West Virginia Code § 49-6-5(a) (1995) states that the circuit court shall give both the petitioner and respondents an opportunity to be heard when proceeding to the disposition of the case. This right must be understood to mean that the circuit court may not impose unreasonable limitations upon the function of guardians ad litem in representing their clients in accord with the traditions of the adversarial fact-finding process. *See also* W. Va.Code § 49-6-5(a) (2002) (Repl.Vol.2004) ("The court shall forthwith proceed to disposition giving both the petitioner and respondents an opportunity to be heard").

■ Thus, both statutory pronouncements and the precedents of this Court·have directed that guardians ad litem must be afforded a meaningful opportunity to fully represent the children. Moreover, both statutory and case law have instructed trial courts that certain procedures, as outlined above, must be followed when progressing through an abuse and neglect case. Where such procedures are not followed, the resulting order is to be vacated, as syllabus point five of *Edward B.* instructs:

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

210 W.Va. at 624, 558 S.E.2d at 623.

■ In this Court's review of the lower court's actions in the present case, we discern specific deficiencies in the lower court's evaluation and resolution which require reversal. The lower court conducted an abbreviated hearing[6] and thereafter dismissed the

---

6. In the July 22, 2004, order dismissing the sec-

ond petition, the lower court characterized the

second petition without additional hearing and denied the Appellant's motion for evaluation of Kimberly and Richard, Jr. It does not appear that a probable cause hearing was necessary in this case since the children had already been removed from the home, had been placed in foster care, and were not in immediate danger. This matter should have proceeded to a full adjudicatory hearing, and the lower court should have provided all parties with an opportunity to be heard. As the guardian ad litem empathizes in her brief, the lower court "ruled and dismissed the matter prior to the completion of the preliminary hearing." A complete evidentiary hearing on the allegations of sexual abuse, as raised in the second petition, was not provided.

Indeed, Elizabeth is now eighteen years of age and has apparently chosen not to reoccupy the family home. The two youngest children, however, would be returned to the family home if this Court affirms the lower court action. As the guardian ad litem asserts, the confines of the abbreviated hearing held by the lower court on April 12, 2004, did not provide the Appellant with the opportunity to effectively litigate the matters asserted in the second petition, to obtain an evaluation of the children whom she served, or to fully articulate matters regarding their welfare.

▪ In *Christina L.*, this Court stated that "[e]rror of substantial proportion was committed when the guardian ad litem was not provided the opportunity to orally articulate his client's best interests." 194 W.Va. at 454, 460 S.E.2d at 700. In the present case, the error is compounded by the fact that the lower court denied the guardian ad litem the opportunity to obtain evaluations which would have been essential in determining the appropriate course of action for these chil-

dren. Kimberly and Richard, Jr., are too young to articulate what had or had not occurred in their home, prior to their initial removal and placement in foster care in December 2002. Their guardian ad litem asserted that they should have been evaluated by a professional, with primary focus placed upon the safety and welfare of those two children. "When, as in the case before us, there is credible evidence of sexual abuse, the risk of harm to the child weighs heavily in this balance, and courts should *err on the side of caution* if necessary to protect children at risk of possible abuse." *Mary Ann P. v. William R.P., Jr.*, 197 W.Va. 1, 10, 475 S.E.2d 1, 10 (1996) (emphasis supplied).

▪ Thus, whether the April 12, 2004, hearing is characterized as a preliminary hearing or an adjudicatory hearing, we find that it provided an insufficient means of resolving the issues raised in the second abuse and neglect petition and failed to adequately protect the rights of Kimberly and Richard, Jr. The guardian ad litem and DHHR were not given a meaningful opportunity to introduce substantive evidence or obtain additional testing necessary to determine the best interests of the two children whom the guardian ad litem was appointed to serve.[7] As this Court determined in *George Glen B.*,

The parties to an abuse and neglect proceeding must be given a meaningful opportunity to introduce substantive evidence in support of their respective positions, before a circuit court makes its final dispositional decision, and the guiding force behind such decision must be what was in the best interests of the child.

205 W.Va. at 444, 518 S.E.2d at 872. Further, the *George Glen B.* Court concluded:

The hearing on a contested petition alleging child sexual abuse is thus, to repeat, extraordinarily important. It is not the sort of thing to be rushed, or taken routinely. Allegations of child molestation are *serious;* they merit more than a rubber stamp. With the exception of death penalty cases, it is hard to imagine an area of the law where there is a greater need for reliable findings by the trier of fact. The consequences of being wrong—*on either side*—are too great.

53 Cal.Rptr.2d at 697.

---

April 12, 2004, hearing as a preliminary hearing and concluded as follows: "The Court, being of the opinion to and having considered the evidence and the testimony taken at the Preliminary Hearing, does hereby find NO PROBABLE CAUSE and ORDERS that this case be DISMISSED and stricken from the docket of this Court."

7. As recognized by the California court in *Blanca P. v. Superior Court*, 45 Cal.App.4th 1738, 53 Cal.Rptr.2d 687 (1996):

**206**

It is clear from the minuscule record in this case that the lower court's consideration of the abuse and neglect proceeding was inadequate. Mandated hearings did not occur, evidence was not taken, yet a determination to dismiss the petition and return custody to the Appellee mother was made. Thus, the lower court's action in this case was not in compliance with pertinent statutes, rules, and case law.

*Id.*, 518 S.E.2d at 872.

■ We are also compelled to comment upon another aspect of the unusual circumstances presented herein. This case was initiated with the first abuse and neglect petition. The precise events alleged in the second petition, regarding the sexual activity allegedly occurring during a driving lesson, were not included in the first petition. They were arguably alluded to in the first petition by the very existence of the letter referencing oral sex, but they were not alleged with particularity in that first petition.

Consequently, this Court does not believe that Elizabeth's initial failure to testify regarding those driving lesson events, whether characterized as fear or forgetfulness, is fatal to the second petition. Such failure does not render her testimony inherently incredible, and it should not have been the sole basis, as appears from the record, for the lower court's decision to dismiss the second petition. It may have provided the court with a legitimate basis for more rigorous investigation of the allegations, but Elizabeth's credibility, as an alleged child sexual assault victim, should not have been totally devalued by her failure to assert all abusive events during the initial hearing.

### IV. Conclusion

The decisive issue in this case is whether the lower court erred by dismissing the abuse and neglect petitions filed against Richard O. The guardian ad litem contends that the dismissals were improper because the lower court failed to provide an adequate hearing. Based upon the foregoing evaluation of this matter, we conclude that the lower court erroneously dismissed the petitions for abuse and neglect. We further conclude that this case should be remanded to the lower court for a complete evidentiary hearing. Upon remand, the lower court should permit the DHHR to promptly file an amended petition, incorporating all allegations from the first and second petitions which are to be addressed.

This matter has lingered in the court system for two and one-half years. While the resolution of this case will no longer impact Elizabeth's residential situation, based upon the fact that she is now eighteen, it is certainly in the best interests of the two younger children to have these allegations properly and thoroughly presented and evaluated by the lower court. Upon remand, the lower court should consider the DHHR's combined petition, as well as all briefs, arguments, and evidence presented by all parties. The court should proceed as expeditiously as possible through all procedures enunciated by the applicable child abuse and neglect statutes, as well as the Rules of Procedure for Abuse and Neglect Cases.

The dismissal orders of the Circuit Court of Roane County of December 3, 2003, and July 22, 2004, are reversed. We direct the lower court to reinstate this abuse and neglect matter for consolidated further proceedings consistent with this opinion.

Reversed and Remanded With Directions.