# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

In Re: T.D. & T.D.

No. 14-1040 (Wayne County 13-JA-69 & 13-JA-70)

**FILED**

May 18, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother E.S., by counsel Jack C. Dolance, appeals the Circuit Court of Wayne County's September 19, 2014, order denying her motion to set aside her voluntary relinquishment to T.D.-1 and T.D.-2. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S. L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), David M. Tyson, filed a response on behalf of the children in support of the circuit court's order.[1] On appeal, petitioner raises two issues: (1) denial of due process of law and fundamental fairness in these proceedings because (a) of a purported conflict of interest with the Wayne County Prosecuting Attorney's Office and (b) no court had determined that she murdered the children's father prior to the filing of the underlying abuse and neglect petition; and (2) invalid relinquishment of parental rights as involuntary, fraudulent, and entered under duress.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2013, the DHHR filed an abuse and neglect petition against petitioner alleging that she murdered the children's father, was arrested and incarcerated therefor, and left the children without a caretaker.[3] Law enforcement arrested petitioner on October 5, 2013, at

---

[1]The guardian incorrectly titled his response a "Reply Brief." We refer the guardian to Rules 10(d), 10(e), 10(g), 11(h), and 11(j) of the West Virginia Rules of Appellate Procedure (requiring a guardian in abuse and neglect proceedings to file either a respondent's brief or summary response.).

[2]In her brief to this Court, petitioner presented two assignments of error as to the alleged denial of due process and fundamental fairness. Although sufficiently argued for appellate review, she did not raise her claim as to the validity of the relinquishment in a separate assignment of error. We reorganize petitioner's issues in this memorandum decision to better address her claims.

[3]The DHHR filed a subsequent amended petition with no changes relevant to this appeal.

1

which time she was incarcerated on charges of first-degree murder.[4] The DHHR claimed that she shot the children's father in the family home while the children were in that home in approximately June of 2013 and buried his body with a friend's assistance.

In November of 2013, the circuit court held an adjudicatory hearing. The DHHR called the Child Protective Services ("CPS") worker, who testified that petitioner confessed to shooting the children's father in the head while the children were in the home and contacting a friend to help bury the body. The CPS worker explained that the body was discovered months later, at which time petitioner was arrested. She added that petitioner had been incarcerated since her arrest in October of 2013. Under cross-examination, the CPS worker admitted that petitioner had not been convicted of any crime in relation to the shooting. However, the CPS worker noted that petitioner lacked the ability to parent because she was incarcerated and was not likely to be released in the near future. She also testified that the children suffered psychological trauma from these events, and petitioner had a CPS history. By order entered on November 22, 2013, the circuit court adjudicated the children as neglected due to petitioner's confession that she shot and killed their father, while the children were in the home, disposed of his body, and was subsequently incarcerated on a first-degree murder charge leaving them without a caretaker.

In January of 2014, the circuit court permitted the parties to present additional evidence as to whether the children had been abused or neglected.[5] The DHHR called an officer with the West Virginia State Police who testified that petitioner admitted to shooting and killing the children's father in approximately June of 2013 while the children were in the bedroom of the home. Petitioner argued that the killing was justified because the children's father abused both her and the children. At the conclusion of this hearing, the circuit court again found that petitioner neglected the children.

Between February and July of 2014, the circuit court held three dispositional hearings. The circuit court heard evidence that petitioner remained incarcerated with no foreseeable release date. Testimony further established that the children were doing well in their placements and that guardianship with the children's paternal aunt was a fully appropriate disposition. At the conclusion of the second dispositional hearing in April of 2014, the circuit court stated that it perceived only two alternatives at that time: terminate petitioner's parental rights or grant permanent guardianship with the children's paternal aunt. However, it continued the matter for a final dispositional hearing. In May of 2014, the children were placed with their paternal aunt. At the final dispositional hearing in July of 2014, under oath, in open court, and in writing,

---

[4]She was incarcerated throughout the entirety of the proceedings below, and, according to the West Virginia Regional Jail authority website, she remains incarcerated as of the date of this memorandum decision, following her guilty plea to the criminal offense of voluntary manslaughter.

[5]By order entered on November 22, 2013, the circuit court entered an adjudication in this matter, which completed the adjudicatory phase of these proceedings. It is unclear from the record on appeal why the circuit court permitted the presentation of additional evidence on the issue of whether the children had been abused or neglected.

petitioner voluntarily relinquished her parental rights to both children. She stated that she understood that her relinquishment would result in the termination of her parental rights, although her counsel stated that she could later petition the court to "perhaps" receive visitation or parenting time with the children. She admitted that the relinquishment was in the children's best interests. By order entered on July 30, 2014, the circuit court accepted her voluntary relinquishment.

In August of 2014, petitioner filed a motion to set aside the July 30, 2014, relinquishment and termination order. Her sole argument in support of her motion was that she was under duress at the time of her relinquishment due to her incarceration and indictment on first-degree murder charges and her inability to participate in services. In September of 2014, the circuit court held a hearing on petitioner's motion. Petitioner testified that she was under duress due to her incarceration, which was due to her lack of a bond set in her criminal proceedings at the time of her relinquishment, and that she had no choice but to voluntarily relinquish her parental rights because she could not participate in DHHR services under such circumstances. She admitted at that hearing that she remained incarcerated despite having a bond set because she could not post that bond. By order entered on September 19, 2014, the circuit court denied her motion finding that her relinquishment was voluntary. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that she was denied due process of law and fundamental fairness as a result of (1) an impermissible conflict of interest with the Wayne County Prosecuting Attorney's Office; (2) improper actions by the DHHR regarding a meeting with a CPS worker days before the final dispositional hearing and the handling of a home study in the State of Florida; and (3) the circuit court permitting the DHHR to proceed and making findings based on the murder of the children's father when no court had yet determined that she murdered

3

him.[6] However, petitioner admits that she did not raise these issues below, either by objection or motion prior to her relinquishment. *See* Rule 10(c)(7), R. App. Pro. (stating that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."). It is well-established that "[o]rdinarily, a party must raise his or her objection contemporaneously with the trial court's ruling to which it relates or be forever barred from asserting that that ruling was in error." *State v. Whittaker*, 221 W.Va. 117, 131, 650 S.E.2d 216, 230 (2007). "This Court will not consider an error which is not preserved in the record nor apparent on the face of the record." Syl. pt. 6, *State v. Byers*, 159 W. Va. 596, 224 S.E.2d 726 (1976). In addition,

> [t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court on pain that, if they forget their lines, they will likely be bound forever to hold their peace . . . it must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996). However, this Court has recognized that "[t]he 'raise or waive' rule is not absolute where, in extraordinary circumstances, the failure to object constitutes plain error." *Id*. at 131 n. 18, 650 S.E.2d at 230 n. 18. "The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." *State v. Miller*, 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995). Therefore, because petitioner failed to properly preserve these issues, any error is foreclosed from appellate review unless it rises to the level of plain error. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id*. at 6, 459 S.E.2d at 117, Syl. Pt. 7.

Petitioner correctly states that she had a right to fundamentally fair procedures and due process of law in the underlying proceedings. *See Santosky v. Kramer*, 455 U.S. 745, 754 (1982) (requiring State to "provide the parents with fundamentally fair procedures" and due process of law in proceedings to terminate parental rights); Syl. Pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973) (holding parental custody of minor child is fundamental personal liberty protected and guaranteed by Due Process Clauses of West Virginia and United States Constitutions); *see also* Syl. Pt. 6, *In re Elizabeth A*., 217 W.Va. 197, 617 S.E.2d 547 (2005) (where it appears from record that process established by the Rules of Procedure for Child Abuse and Neglect Proceedings . . . has been substantially disregarded or frustrated, resulting order of disposition will be vacated and case remanded for compliance with that process and entry of appropriate dispositional order.). However, based on our review of the record on appeal, we find no denial of due process or fundamentally fair proceedings in this matter.

---

[6]Although petitioner separates her claims of denial of due process into two assignments of error, we find that they are related. Therefore, we address them together.

4

Despite petitioner's argument that the assistant prosecutor at issue, Gary L. Michels, and the entire prosecuting attorney's office, should have been disqualified because he previously represented the children's father in domestic proceedings against petitioner, it is not clear from the record on appeal that a conflict existed.[7] Nonetheless, if an impermissible conflict did exist, petitioner admits that Mr. Michels did not participate in these abuse and neglect proceedings, although others in the Wayne County prosecutor's office did. Importantly, petitioner fails to cite any controlling authority to support disqualification of an assistant prosecutor, or the entire prosecuting attorney's office, from civil abuse and neglect proceedings under these circumstances. While she cites a favorable passage from our opinion in *Nicholas v. Sammons* to support her claim, regarding a prosecutor's personal interest in the criminal context, she ignores our holding in that opinion that "[i]t is generally held that past representations of a victim on civil matters unrelated to the criminal charges involving the defendant ordinarily will not disqualify a prosecutor." Syl. Pt. 3, 178 W.Va. 631, 363 S.E.2d 516 (1987). Contrary to petitioner's argument, it appears that the impetus for the prosecuting attorney's office to voluntarily disqualify itself from her criminal proceedings was that she listed Mr. Michels as a potential witness at her criminal trial. Petitioner does not indicate where in the record on appeal in this matter where she filed a similar witness list. However, even if we applied the same standards applicable in the criminal context to this matter, we cannot find, based on the record before us, that Mr. Michels's representation of the children's father was related to the underlying abuse and neglect petition here. Mr. Michels represented the children's father in domestic proceedings against petitioner. The underlying abuse and neglect petition was based, not on the domestic violence, but on petitioner's alleged murder of the children's father and her subsequent incarceration for that offense leaving the children without a caretaker.

We also find no error in petitioner's remaining claims that she was denied due process. Petitioner cites no authority to support her argument that the CPS worker was not permitted to meet with petitioner prior to the final dispositional hearing. Moreover, as petitioner was incarcerated at the time of this alleged meeting, petitioner must have agreed to do so. We also disagree with her claim that the DHHR could not proceed on an abuse and neglect petition until a court determined that petitioner committed murder. West Virginia Code § 49-6-5b(a)(3) requires the DHHR to seek termination of a person's parental rights when "a court has determined the parent had committed murder . . . of . . . the other parent[.]" Petitioner misunderstands the requirements of this statutory provision. The fact that no court had determined that petitioner committed the murder, while not triggering the requirement of West Virginia Code § 49-6-

---

[7]To the extent petitioner argues that we should consider this issue as newly discovered evidence, we cannot find that the alleged conflict with the Wayne County prosecutor's office is newly discovered. Although we find no authority that permits a person to re-open abuse and neglect proceedings following a relinquishment due to newly discovered evidence, we need not consider the point here. Petitioner states in her brief that she knew that Mr. Michels represented the children's father before his death, which was before the underlying petition was filed. She further claims that the alleged conflict added to her duress when she relinquished her parental rights. Therefore, she knew of the alleged conflict prior to the underlying proceedings, and it could not have been newly discovered by her after those proceedings ended. Thus, we do not now consider the alleged conflict as newly discovered evidence.

5b(a)(3) to seek termination, would not prevent the DHHR from filing a petition and pursuing the same. Indeed, such a ruling would fly in the face of Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect, which provides that "[u]nder no circumstances shall a civil protection proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." As to her final due process claim, we find no error in the circuit court's finding of aggravated circumstances and ruling that the DHHR need not make reasonable efforts to preserve the family. *See* W. Va. Code § 49-6-5(a)(7) (stating that "the department is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has: (i) Committed murder of the child's other parent. . ."). The circuit court was permitted to make such a finding in light of petitioner's confession to police. Even if we found error, such error would be harmless and not plainly affecting substantial rights. Petitioner remained incarcerated throughout these proceedings and, as a result, failed to participate in services. We find no plain error in the circuit court's failure to await petitioner's outcome in the criminal matter and potential release to require the DHHR to make reasonable efforts to preserve the family. *See In re: Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011) (stating that "incarceration may unreasonably delay the permanent placement of the child deemed abused or neglected, and the best interests of the child would be served by terminating the incarcerated person's parental rights."). For the foregoing reasons, we find no plain error in petitioner's proceedings.

In her final claim on appeal, petitioner argues that her relinquishment of parental rights was invalid.[8] West Virginia Code § 49-6-7 provides that "[a]n agreement of a natural parent in termination of parental rights shall be valid if made by a duly acknowledged writing, and entered into under circumstances free from duress and fraud." In syllabus point 3 of *In re: Cesar L.*, we explained that West Virginia Code § 49-6-7 "permits a parent to voluntarily relinquish his/her parental rights. Such voluntary relinquishment is valid pursuant to W.Va. Code § 49-6-7 if the relinquishment is made by 'a duly acknowledged writing' and is 'entered into under circumstances free from duress and fraud.'" 221 W.Va. 249, 654 S.E.2d 373 (2007). We have further explained that

> [w]hile W.Va. Code [§] 49-6-7 specifically permits a relinquishment of parental rights, it clearly suggests that such an agreement may be invalid if it is not entered into under circumstances that are free of duress and fraud. Whether there has been fraud or duress is a question of fact that must be determined by the circuit court judge.

*State ex rel Rose v. Pancake*, 209 W.Va. 188, 191, 544 S.E.2d 403, 406 (2001).

---

[8]Petitioner lacks standing to move to modify the circuit court's dispositional order. *See* Syl. Pt. 6, *In re: Cesar L.*, 221 W.Va. 249, 654 S.E.2d 373 (2007) (stating that when "parental rights have been terminated by a final order, as the result of . . . a voluntary relinquishment of parental rights, [that person] does not have standing . . . to move for a modification of disposition[.]"). Therefore, we address only petitioner's arguments as to the final disposition as they relate to the validity of her relinquishment of parental rights.

In both *In re: Cesar L.* and *Rose*, we discussed the elements of duress and fraud as follows:

> [A] relinquishment agreement that is made in writing and entered into under circumstances free from duress and fraud is valid. A parent attempting to show otherwise is faced with a challenging task. Indeed, the threshold for establishing duress and fraud in the context of the relinquishment of parental rights is extremely high. As to duress, this Court has held that, in the context of an adoption, duress "means a condition that exists when a natural parent is induced by the unlawful or unconscionable act of another to consent to the adoption of his or her child. Mere 'duress of circumstance' does not constitute duress[.]" Syl. pt. 2, in part, *Wooten v. Wallace*, 177 W.Va. 159, 351 S.E.2d 72 (1986). *See also Baby Boy R. v. Velas*, 182 W.Va. 182, 185, 386 S.E.2d 839, 842 (1989) ("[Duress] means a condition that exists when a natural parent is induced by the unlawful or unconscionable act of another to consent to the adoption of his or her child."). With respect to fraud, we have held:
>
> > The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.
>
> Syl. pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981) . . . .
>
> Finally, I wish to emphasize that a parent challenging a relinquishment of his or her parental rights on the grounds of duress and fraud has the difficult responsibility of establishing the elements outlined above by clear and convincing evidence. *See, e.g.*, [W. Va.Code §] 48–4–5(a)(2) (1997) (Repl.Vol.1999) (allowing revocation of adoption due to fraud or duress only where "[t]he person who executed the consent or relinquishment proves by *clear and convincing* evidence . . . that the consent or relinquishment was obtained by *fraud or duress* " (emphasis added)) . . . .
>
> [I]t is clear that a parent has a heavy burden to establish duress or fraud once he or she has relinquished parental rights . . . .

*In re: Cesar L.* at 261-62, 654 S.E.2d at 385-86 (citing *Rose*, 209 W.Va. at 192–93, 544 S.E.2d at 407–08 (Davis, J., concurring) (emphasis in original) (additional citations omitted)).

In this case, petitioner fails to satisfy her heavy burden on appeal. Although she argues that she was under "extraordinary duress" due to her incarceration on a first-degree murder charge and the pressure of a potentially imminent involuntary termination, these circumstances do not constitute duress sufficient to set aside a voluntary relinquishment. As to petitioner's incarceration, we have held that incarceration alone does not constitute sufficient duress to set aside a voluntary relinquishment. *See Id.* (stating that incarceration alone, which removed

parent's ability to care for child, was a "[m]ere 'duress of circumstance'" that did not constitute duress to set aside voluntary relinquishment.) (citations omitted). As to her potentially imminent involuntary termination, petitioner expressly testified, under oath, that her relinquishment was made without any coercion or intimidation and was of her own free will. We find no evidence to contradict that testimony. The record before us does not support a finding of duress.

Petitioner also fails to demonstrate that she was the victim of fraud. Contrary to her argument that she failed to understand the consequences of her relinquishment due to statements by her counsel and the circuit court, the record clearly demonstrates that she signed the relinquishment forms with advice of counsel. Those forms specifically provide, "I hereby voluntarily consent to the permanent transfer of the legal custody" of the children to the DHHR. Her counsel stated on the record that "I believe that she has been fully advised of her rights as to her children and the consequences of relinquishing her parental rights." Her counsel then asked her, under oath, "[a]nd do you know and understand that if the Judge approves, accepts, your voluntary relinquishment, your parental rights to these boys will be terminated?" She unequivocally replied, "[y]es." While her counsel stated that she could later petition the court to "perhaps" have parenting time or visitation, such a statement does not support a finding of fraud. Post-termination visitation is a separate and distinct issue from that of termination. Similarly, we find no fraud in her counsel's and the circuit court's questions regarding whether she believed relinquishment was in the children's best interests "at that time" to which she answered "[y]es." Petitioner's argument implies that the circuit court should have disregarded her statement of understanding at the time she entered her relinquishment. We find no merit to petitioner's argument. Petitioner's relinquishment was valid.

Therefore, we find no error in the decision of the circuit court, and its September 19, 2014, order is hereby affirmed.

Affirmed.


**ISSUED**: May 18, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II