IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**June 15, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0419

IN RE S.C., K.R., and E.H.

Appeal from the Circuit Court of Upshur County
The Honorable Kurt W. Hall, Judge
Case Nos. 21-JA-53, 21-JA-54, and 21-JA-55

REVERSED AND REMANDED

Submitted: March 29, 2023
Filed: June 15, 2023

Jamella L. Lockwood, Esq.
Lockwood Law Office
Buckhannon, West Virginia
Guardian ad Litem
Petitioner

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Grant A. Newman, Esq.
Assistant Solicitor General
Charleston, West Virginia
Chaelyn W. Casteel, Esq.
Fairmont, West Virginia
Counsel for Respondent DHHR

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WOOTON dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.      "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syllabus Point 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

i

WALKER, Chief Justice:

The guardian ad litem representing the interests of an infant child asks this Court to find that the child's father threatened her well-being when he chronically abused methamphetamine while serving as her physical custodian. The circuit court noted the obvious adverse effects of methamphetamine abuse on a parent's ability to safely care for a child. But, incorrectly believing a prior decision by this Court required it to deny the adjudication, the circuit court "reluctantly" dismissed the abuse and neglect petition and ordered that the State return the child to the father—despite his sustained and uninterrupted methamphetamine abuse. We find the case relied on by the circuit court materially distinguishable from this case. And, we clarify that a parent threatens his child's well-being when he chronically and admittedly abuses methamphetamine while entrusted as the child's custodian. So, we reverse the circuit court's order dismissing the abuse and neglect petition against the father and remand for the circuit court to adjudicate him as a neglectful parent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2021, the West Virginia Department of Health and Human Resources filed an abuse and neglect petition against Respondent Mother M.C. after she admitted to abusing methamphetamine while pregnant with her newborn child, S.C.[1] The

---

[1] We use initials to identify the parties in abuse and neglect cases. *See* W. Va. R. App. Proc. 40(e).

petition also alleged that the mother abused and neglected minor children K.R. and E.H. by exposing them to drug-endangered and neglectful conditions. The petition named Respondent Father S.R. as the non-offending father of K.R. and non-offending putative father of S.C. After considering the allegations against the mother, the circuit court ordered on August 30, 2021, that the DHHR assume temporary legal and physical custody of S.C. and K.R.[2] The DHHR left K.R. in the father's physical custody because she resided with him before the DHHR filed the abuse and neglect petition.[3]

At the September 7, 2021 preliminary hearing for the petition against the mother, the guardian ad litem informed the circuit court that at some point before the hearing, the father told her that he would test positive for marijuana if he submitted a drug screen. So, the circuit court required him to drug test that day, and he tested positive for amphetamine, methamphetamine, and marijuana. He also admitted to consuming methamphetamine the day before. The DHHR removed K.R. from the father's physical custody and filed an amended abuse and neglect petition on September 15, 2021, adding him as an alleged abusive and neglectful parent for his admitted drug use while having physical custody of K.R. By order entered October 29, 2021, the circuit court required the

---

[2] The circuit court left E.H. in the legal and physical custody of his non-offending father A.H.

[3] K.R., the child factually at issue in this appeal, was born in August 2020 and was approximately one year old when the DHHR filed the abuse and neglect petition against the mother.

2

father to submit to random drug screens and granted him supervised visitation with K.R., contingent upon production of clean drug test results.

Prior to the April 8, 2022 adjudicatory hearing, the father skipped most required drug tests, and when he submitted to them, he tested positive for methamphetamine and other drugs. So, he received no visitation with K.R. for more than six months. At the outset of the adjudicatory hearing, the father's counsel moved to dismiss the amended petition as facially insufficient. His counsel argued that the petition contained insufficient allegations because the father's methamphetamine abuse did not establish that he abused or neglected K.R. The circuit court held the motion in abeyance and proceeded with the adjudicatory hearing. The DHHR called three witnesses: (1) Shawna Vanderhoff, the Child Protective Services Worker assigned to the case, (2) the father, and (3) Katie Pritt, an outreach coordinator for HomeBase, Inc., the company assigned to provide parenting skills training to the father.

Ms. Vanderhoff testified that upon receiving legal custody of K.R. on April 30, 2021, the DHHR left her in the father's physical custody because the DHHR considered him a non-offending parent at the time. But, she explained, the DHHR removed K.R. from his physical custody after he failed the September 7, 2021 drug test because "we didn't feel safe leaving her with someone who had tested positive for methamphetamine." The guardian ad litem asked Ms. Vanderhoff whether a parent can adequately supervise a child when abusing methamphetamine. But before she could answer the question, the father's

3

counsel objected, arguing Ms. Vanderhoff lacked the expert qualifications necessary to reliably answer the question.  The circuit court interjected and explained its intent to take judicial notice that a parent's methamphetamine abuse adversely affects parental abilities.

The father testified that he abused methamphetamine consistently for the previous decade, that he consumed it solely while working as a logger, and that he smoked marijuana to "smooth things over."  He explained that the methamphetamine brought him "a little bit of—peace, a little energy . . . . [to get] through the rest of the day."  He claimed that he never abused methamphetamine around K.R. and that he left her with his friend's mother while he abused methamphetamine at work.

Ms. Pritt testified that during her meetings with the father, he explained that his methamphetamine abuse did not present any issues.  She also testified that, on paper, the father demonstrated "exceptional insight" into parenting.  But she conceded that she never observed the father care for K.R. because he never passed a drug test that would allow him supervised visitation.

At the conclusion of the adjudicatory hearing, the circuit court granted the parties ten days to submit additional legal authority supporting their positions as to whether a child's physical custodian abuses or neglects his child by abusing methamphetamine.

4

The father's counsel submitted this Court's memorandum decision *In re J.L.-1*[4] to support the father's position that he provided acceptable parenting despite his methamphetamine abuse. At the dispositional hearing, the circuit court explained that although it took judicial notice that a parent cannot abuse methamphetamine and adequately parent his child, *In re J.L.-1*. "requires the [c]ourt to make a finding otherwise."

In its May 20, 2022 adjudicatory order, the circuit court found that the abuse and neglect petition adequately notified the father of the allegations, so the circuit court denied the motion to dismiss. As to the merits of the abuse and neglect allegations, the circuit court reiterated in its order that *In re J.L.-1* dictated its decision, and the circuit court "reluctantly" refused to adjudicate the father: "[T]he court is of the opinion to and thereby, reluctantly, as this court is bound by the West Virginia Supreme Court of Appeals decision in *In re J.L.-1 & E.L*, [finds] . . . . [t]hat the infant child [K.R.] was neither abused [n]or neglected by [the father] . . . ." The circuit court explained that, in its view, this case is like *In re J.L.-1* because the father abused methamphetamine when K.R. was "not in his custody." The circuit court also found that the father's methamphetamine abuse "has not inhibited his parenting ability and renders him capable of adequately caring for or supervising his child." In addition to denying adjudication, the circuit court ordered that the DHHR return physical and legal custody of the infant to the father within ninety days.

---

[4] No. 20-0168, 2020 WL 6482940, at *1 (W. Va. Nov. 4, 2020) (memorandum decision).

The guardian ad litem appealed the circuit court's order, and this Court, by order dated June 14, 2022, stayed its enforcement pending appeal. So, K.R. remained in DHHR's physical and legal custody until the DHHR returned her to the mother's care upon successful completion of her improvement period. According to a February 22, 2023 status update from the guardian ad litem, the father has "a capias for his arrest on an underlying criminal charge and his whereabouts are unknown."[5]

The guardian ad litem claims on appeal that the circuit court (1) erroneously relied on *In re J.L.-1* and (2) should have adjudicated the father as a neglectful parent because his methamphetamine abuse threatened K.R.'s well-being, making her a neglected child under West Virginia Code § 49-1-201 (2018). The father did not file a response. The DHHR and the mother support the guardian ad litem's position, as do we.

## II. STANDARD OF REVIEW

In abuse and neglect cases, we review legal questions de novo and set aside factual findings if clearly erroneous:

> Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of

---

[5] The guardian ad litem attached as an exhibit to the status update a December 29, 2022 capias order from the Magistrate Court of Upshur County indicating that the father failed to appear for a hearing related to charges of driving with a suspended license and possession of a controlled substance.

6

law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[6]

## III. ANALYSIS

Because the guardian ad litem's assignment of error hinges on the circuit court's application of *In re J.L.-1.*,[7] we begin our analysis there. In that case, the DHHR filed an initial abuse and neglect petition against a father, alleging that he abused illicit substances, committed domestic violence, and failed to supervise his children, among other allegations.[8] The circuit court granted the DHHR temporary physical custody of the children, and after the DHHR assumed physical custody of them, the father failed drug screens for methamphetamine.[9] After an adjudicatory hearing, the circuit court found that the DHHR presented insufficient evidence to prove the allegations and dismissed the petition.[10] So, the DHHR filed a second abuse and neglect petition against the father, with

---

[6] Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

[7] No. 20-0168, 2020 WL 6482940, at *1.

[8] *Id.*

[9] *Id.* at *3-4.

[10] *Id.* at *2.

7

the only new allegations being the failed drug screens from the prior proceedings.[11] The circuit court adjudicated him based on the allegations of drug use, supported only by the drug screens from the prior proceedings, during which time the children were in the sole custody of DHHR, not the father.[12] This Court reversed the adjudication because "the DHHR's evidence showed only that [the father] abused methamphetamine at a time when the children were not in his custody."[13] We explained that the DHHR presented no evidence that the father "abused drugs while the children were in his care" and that the DHHR "failed to link such substance abuse to threatening the health and safety of the children."[14]

We find the present case materially distinguishable from *In re J.L.-1* because Respondent Father failed drug screens and admitted to abusing methamphetamine while entrusted as K.R.'s physical custodian. This is different than *In re J.L.-1* where the DHHR had care, custody, and control of the children when the father returned drug screens showing that he abused methamphetamine. The circuit court found that because Respondent Father claimed to have only abused methamphetamine while at work, he did not abuse it while having custody of K.R. But a parent with physical custody serves as a

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at *4.

[14] *Id.*

8

child's primary supervisor and day-to-day decision-maker.[15]  And it follows that he does not discharge his supervisory and decision-making responsibilities when he entrusts his child to a temporary caretaker.  Because the DHHR produced evidence that the father abused methamphetamine while serving as K.R.'s physical custodian, the circuit court erroneously relied on *In re J.L.-1* as its primary basis for refusing to adjudicate the father as a neglectful parent.

We turn next to the guardian ad litem's second assertion that the father's methamphetamine abuse qualified K.R. as a neglected child under West Virginia Code § 49-1-201.  The statute defines, in relevant part, a neglected child as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary . . . supervision . . . . ."[16]  In this instance, the circuit court took judicial notice that "people that use methamphetamine are adversely affected, and it adversely affects their ability to parent." A circuit court may take judicial notice of an adjudicatory fact if it "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy

---

[15]  *See, e.g,* W. Va. Code § 48-20-102(n) (2001) ("'Physical custody' means the physical care and supervision of a child.").

[16]  W. Va. Code § 49-1-201.

cannot reasonably be questioned."[17] The use of judicial notice is often an expression of

common sense:

> "[W]here a fact is well-known by all reasonably intelligent people in the community, or its existence is so easily determinable with certainty from unimpeachable sources, it would not be good sense to require formal proof." *Harper v. Killion*, 345 S.W.2d 309, 311 (Tex.Civ.App.), *aff'd*, 162 Tex. 481, 348 S.W.2d 521 (1961). Instead, under either of these circumstances, the court may invoke the doctrine of judicial notice, which is essentially an expression of common sense. *Id.*[18]

For instance, "[a] judge may take judicial notice of well-known and undisputed facts about

the effect of alcohol on the human body."[19] The same can be said about the harmful effects

of methamphetamine. Indeed, the Legislature has specified many of the harmful effects it

produces:

> [The] use of methamphetamine can result in fatal kidney and lung disorders, brain damage, liver damage, blood clots, chronic depression, hallucinations, violent and aggressive behavior, malnutrition, disturbed personality development, deficient immune system and psychosis.
>
> . . . .
>
> [I]n addition to the physical consequences to an individual who uses methamphetamine, usage of the drug also produces an increase in automobile accidents, explosions and fires, increased criminal activity, increased medical costs due to emergency room visits, increases in domestic violence,

---

[17] W. V. R. Evid. 201(b) (2014).

[18] *Poulnot v. District of Columbia*, 608 A.2d 134, 141 (D.C. 1992) (internal footnote removed).

[19] *Id.* at 142.

increased spread of infectious diseases and a loss in worker productivity.[20]

With the damaging effects of methamphetamine abuse readily known and codified, the circuit court acted within its discretion when it took judicial notice that methamphetamine abuse inherently hinders parental abilities when that parent serves as a physical custodian of his child.[21] We also believe that admitted, chronic, and pervasive methamphetamine abuse by a parent entrusted with physical custody of his child necessarily proves an inability to provide adequate supervision and threatens the child's well-being within the meaning of West Virginia Code § 49-1-201.[22]

---

[20] W. Va. Code § 60A-10-2(c)-(d) (2005).

[21] *See*, *e.g., Am. Fam. Mut. Ins. Co. v. Pacchetti*, 808 S.W.2d 369, 371 (Mo. 1991) (taking judicial notice of the harmful effects of cocaine because state and federal statutes established them); *State v. Balzer*, 954 P.2d 931, 938 (Wash. Ct. App. 1998) ("we take judicial notice of marijuana's effects and harmfulness as evidenced by legislative assessments expressed in both state and federal case law."); *United States v. Kuch*, 288 F. Supp. 439, 452 (D.D.C. 1968) (taking judicial notice of the health hazards related to marijuana use); *In re Perra*, 827 N.Y.S.2d 587, 592 (N.Y. Sup. Ct. 2006) (taking judicial notice that smoking while pregnant harms a fetus because the fact is "well-known, well-publicized fact relating to human life."); *Commonwealth v. Morin*, 941 N.E.2d 1149 (Mass. App. Ct. 2011) (affirming the lower courts judicial notice of the risks associated with heroin use because "the cases highlight the inherently dangerous nature of heroin use."); *Reilly v. 180 Club Inc.*, 82 A.2d 210, 212 (N.J. Super. Ct. App. Div. 1951) (taking judicial notice of effects on human behavior caused by excessive alcohol consumption).

[22] We recently addressed a related issue in *In re D.A.*, No. 22-0151, 2022 WL 16549292, at *1 (W. Va. Oct. 31, 2022) (memorandum decision). In the case, we remanded for the circuit court to make further factual findings findings to support its conclusion that the parent's methamphetamine abuse alone supported the circuit court's adjudication. *Id.* This Court reasoned that "[t]he circuit court simply declared that petitioner had a substance abuse problem and also had custody of the children, instead of making detailed findings (continued . . .)

In prior abuse and neglect cases, we have explained that "because the positive drug screen result constituted clear and convincing evidence of [the father's] ingestion of methamphetamine, the circuit court did not err by adjudicating [him] as abusive and neglectful on this basis[,]"[23] and "the circuit court needed only to rely on petitioner's recent drug abuse to both adjudicate him as an abusing parent and later to terminate his parental rights."[24] We find no difference in this case since the father admittedly abused methamphetamine while having physical custody of K.R.

Our position comports with the plain language of West Virginia Code § 49-1-201. The statute does not require that a parent's conduct be directed at his child or that the child suffer injury; it requires that a parent's conduct *threatens* his child's well-being.[25] A father with physical custody of his child certainly threatens the child's well-being when he abuses a drug that induces psychosis, hallucinations, death, and other harmful physical

that demonstrated petitioner's substance abuse impacted his parenting ability and harmed or threatened the children. This is insufficient for purposes of adjudication." *Id.* at *2. We find the case currently before us distinguishable given the circuit court's detailed findings about the father's chronic, admitted, and extensive drug abuse while serving as his child's physical custodian.

[23] *In re S.H.-1*, No. 20-1000, 2021 WL 5234715, at *4 (W. Va. Nov. 10, 2021) (memorandum decision).

[24] *In re H.C.*, No. 12-0471, 2012 WL 4838995, at *2 (W. Va. Sept. 24, 2012) (memorandum decision).

[25] *See*, *e.g.*, *In re A.J.-1*, Nos. 20-0824 and 20-0918, 2021 WL 2272435, at *1-2 (W. Va. June 3, 2021) (memorandum decision) (adjudicating a father after he committed domestic violence against other residents of his child's home).

12

effects, and also increases the risk of crime, violence, and catastrophic incidents. As the circuit court judicially noticed, the "use of methamphetamine exposes a person to the drug trade and drug violence, and possible overdose death." Likewise, this Court, in the criminal context, presumes the threat of violence that accompanies illegal drug abuse.[26] We can presume, as the circuit court did here, the same attendant circumstances in the abuse and neglect context where we apply a lower standard of proof and "*err on the side of caution if necessary to protect children at risk of possible abuse.*"[27] As we often reiterate, "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."[28] A parent's methamphetamine abuse threatens his or her child's health and welfare and makes the child a "neglected child" as defined by West Virginia Code § 49-1-201.

The father's conduct after the DHHR removed K.R. from his custody demonstrates the realities of his addiction and sheds light on the conditions that existed

---

[26] *See*, *e.g.*, *State v. Norwood*, 242 W. Va. 149, 158, 832 S.E.2d 75, 84 (2019) ("[T]his Court concludes that the delivery and use of heroin carries with it a potential for actual violence to a person.").

[27] *In re Elizabeth A.*, 217 W. Va. 197, 205, 617 S.E.2d 547, 555 (2005) (quoting *Mary Ann P. v. William R.P. Jr.*, 197 W. Va. 1, 10, 475 S.E.2d 1, 10 (1996) (Workman, J., concurring)).

[28] Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

prior to these proceedings.[29] The circuit court granted father visitation with K.R. if he could produce a clean drug screen. But he chose to abuse methamphetamine over visitation with K.R. for more than six months. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to . . . achieve minimum standards to parent the child."[30] We have refused to accept a parent's choice of drugs over visitation in prior cases: "Put plainly, [the parent] chose to continue abusing drugs over visiting with or supporting the children. This completely undermines [the parent's] argument on appeal that she 'wants to be involved in the lives of the children.' When given the chance to do just that, [the parent] instead chose to continue her substance abuse . . . ."[31]

The father's choice does not reflect the love or concern he has for his daughter; it reflects the hold his addiction has upon him. But where the best interest of the child drives our decisions, we must be convinced that a parent considers his child's well-being over drug abuse. The father's conduct indicates otherwise. We believe adjudication

---

[29] *In re Brandon Lee B.*, 211 W. Va. 587, 590, 567 S.E.2d 597, 600 (2001) ("[F]acts developed after the filing of the petition . . . may be considered in evaluating the conditions which existed at the time of the filing of the petition . . . .").

[30] *In re Katie S.*, 198 W. Va. at 90 n.14, 479 S.E.2d at 600 n.14 (citing *In Interest of Tiffany Marie S.*, 196 W. Va. at 228, 237, 470 S.E.2d at 182, 191).

[31] *In re T.W.*, No. 21-0915, 2022 WL 1115422, at *4 (W. Va. April 14, 2022) (memorandum decision).

14

will offer him the benefits of state services, including substance abuse treatment, and comports with the Legislature's intent "to assure that . . . services are provided to the parent[] . . . in order to improve the conditions that made the child unsafe in the care of . . . her parent[] . . . ."[32]

## IV.    CONCLUSION

For these reasons, we reverse the circuit court's May 20, 2022 order dismissing the abuse and neglect petition against the father.  And we remand for the circuit court to adjudicate him as a neglectful parent and to initiate further proceedings.

Reversed and Remanded.

---

[32]  W. Va. Code § 49-4-604(a)(1) (2020).